IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUREIS HEALTHCARE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>EPIC SYSTEMS CORPORATION,<br><br>Defendant. | Case No. 25-cv-04108-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE TO WESTERN DISTRICT OF WISCONSIN** |

Before the Court is defendant Epic Systems Corporation's ("Epic") "Motion to Transfer Venue to the Western District of Wisconsin Pursuant to 28 U.S.C. § 1404(a)," filed June 17, 2025. Plaintiff CureIS Healthcare, Inc. ("CureIS") has filed opposition, to which Epic has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

In the operative complaint, the First Amended Complaint ("FAC"), CureIS alleges that CureIS and Epic each provide software used by entities in the healthcare industry. In particular, CureIS alleges, (1) Epic has a "monopoly" in the nationwide market for "Electronic Health Record" ("EHR") software (see FAC ¶¶ 26-27, 31), which software "generates and stores medical records and bills" and is used by "hospitals and other healthcare providers who need to generate medical records" (see FAC ¶ 32), (2) Epic has "monopoly power" in the nationwide market for "Core Administrative Processing Systems" ("CAPS") to the extent CAPS software is used by provider-sponsored health

---

[1] By order filed August 4, 2025, the Court took the matter under submission.

plans ("PSHPs") (see FAC ¶¶ 32,121),[2] which entities use said software "to properly process [medical] bills by applying contractual terms, coverage rules, and regulatory standards to determine what should be paid, denied, or flagged" as well as "to integrate clinical and administrative data, streamline operations, and support value-based care models" (see FAC ¶ 32, 33), and (3) CureIS operates in the nationwide market for "managed care middleware" ("MCM"), which software is used by "managed care organization[s]" ("MCOs") (see FAC ¶¶ 44, 45)[3] "to access clinical and billing data, automate payer-facing processes, and support compliance with regulatory and contractual requirements" (see FAC ¶ 39).

According to CureIS, Epic is engaging in a "scheme" to "improperly interfere with CureIS's business, as well as that of other providers of MCM software." (See FAC ¶ 6.) Epic "typically do[es] so," CureIS alleges, by "misrepresenting to customers that it either has plans to roll out a version of a competitor's product soon, or that Epic has a current product that replicates the functionality of a competitor's product, even though Epic's products are typically of much lower quality," and, "even if a customer [of Epic] wants to use a third-party's MCM software (like CureIS's software), Epic will not allow them to do so." (See FAC ¶ 7.) CureIS also alleges that Epic has "specifically" targeted CureIS "by coercing mutual customers to terminate their relationships with CureIS, denying CureIS's customers access to their own data for the purpose of harming CureIS, degrading the quality of CureIS products to stifle competition, falsely disparaging CureIS to CureIS's

---

[2] According to CureIS, PSHPs are plans that "own and operate their own insurance plans." (See FAC ¶ 33.) CureIS alleges that "[w]ithin CAPS software generally," a "narrower product market exists for CAPS software for PSHPs." (See FAC ¶ 33.) CureIS does not allege Epic has a monopoly in the broader product market for CAPS software.

[3] According to CureIS, MCOs are "health insurance plan[s] that contract[ ] with healthcare providers and medical facilities to provide care at reduced costs." (See FAC ¶ 9 n.1.) CureIS alleges MCM software used by MCOs "sits between EHR software and CAPS software" (see FAC ¶ 37), in that MCM software "translates billing and encounters data from a provider's EHR software into a format that can be properly validated and analyzed within a payer's CAPS software" (see FAC ¶ 4).

current customers and prospective customers, and engaging in widespread false advertising."  (See FAC ¶ 8.)

Based on the above allegations, CureIS asserts nine Claims for Relief, namely, (1) "Violation of the Sherman Act Section 1 (15 U.S.C. § 1): Exclusive Dealing"; (2) "Violation of the Sherman Act Section 2 (15 U.S.C. § 2): Monopoly Maintenance"; (3) "Violation of the Sherman Act Section 2 (15 U.S.C. § 2): Attempted Monopolization"; (4) "Tortious Interference With Contract"; (5) "Tortious Interference With Prospective Business Relations"; (6) "Trade Libel"; (7) "False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(A)"; (8) "Unlawful and Unfair Competition (Cal. Bus. Prof. Code § 17200, et seq."; and (9) "Unfair Competition/False Advertising (Cal. Bus. & Prof. Code § 17500).

**DISCUSSION**

As noted, Epic seeks, pursuant to § 1404(a), an order transferring the above-titled action to the Western District of Wisconsin.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  In deciding whether transfer is appropriate, courts consider the following non-exhaustive list of factors:  "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum."  See Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2011) (citing Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986)).

As a threshold matter, there is no dispute here that the instant action might have been brought in the Western District of Wisconsin, a district in which Epic "resides," see 28 U.S.C. § 1391(b)(1), in that Epic's headquarters are located in Verona, Wisconsin (see Peterson Decl. ¶ 3), a city within Dane County, see 28 U.S.C. 130(b) (providing

Western District of Wisconsin includes Dane County), and where a "substantial part of the events . . . giving rise to the claim[s] occurred," see 28 U.S.C. § 1391(b)(2), in that most, if not all, of the challenged conduct by Epic occurred in the Western District of Wisconsin (see, e.g., FAC ¶¶ 7-8, 12, 51, 63, 90; Peterson Decl. ¶¶ 6, 8, 9, 14, 22).

The Court next considers the relevant factors, in turn.

First, CureIS's choice of the instant forum is not entitled to deference, and, consequently, is at best entitled to minimal consideration, weighing only slightly, if at all, against transfer. In particular, CureIS does not reside in this District, does not have any employees in this District, and has failed to identify any relevant events that occurred in this District. See Pacific Car and Foundry Co. v. Pence, 403 F.2d 949, 954-55 (9th Cir. 1968) (holding, where plaintiff is not "found" in chosen district and operative facts from which plaintiff's claim arise do not occur in chosen district, plaintiff's choice "entitled only to minimal consideration").

Second, the convenience of the parties weighs in favor of transfer. Neither CureIS nor Epic resides in this district. CureIS is a Minnesota corporation, with offices located in Minnesota and Arizona (see FAC ¶ 11),[4] and the FAC identifies two CureIS managers, namely, its Chief Executive Officer and Chief Operating Officer, each of whom is alleged to have heard from former and prospective customers about Epic's alleged anticompetitive conduct (see, e.g., FAC ¶¶ 54-55, 69-72, 79), and each of whom resides in the Western District of Wisconsin (see Sawotin Decl. ¶ 9 and 5:6-8; Moskowitz Decl. Ex. B).[5] Moreover, Epic is a Wisconsin corporation, with its principal place of business in

---

[4] In a declaration filed July 1, 2025, CureIS's Chief Executive Officer states approximately 80% of CureIS's employees work remotely "across the country" and that CureIS has one physical office, which is located in Tucson, Arizona. (See Sawotin Decl. ¶¶ 3-4.) Two weeks later, CureIS filed its FAC, in which it states it has physical offices in both Minnesota and Arizona. (See FAC ¶ 11.)

[5] The above-referenced Sawotin Declaration identifies six other employees or managers, but fails to provide any specific details about their knowledge of Epic's alleged conduct or CureIS's alleged losses, and, in any event, none of those other employees resides in this District.

1    the Western District of Wisconsin, where approximately 99.6% of its workforce is
2    employed. (See Peterson Decl. ¶¶ 3, 6.) When, as here, neither the plaintiff nor the
3    defendant resides in the district where the plaintiff filed the action, courts have found the
4    convenience of the parties weighs in favor of transfer to the district where the defendant
5    resides, particularly where "its departments immediately relevant to th[e] case operate
6    from that location." See Lewis v. Southwest Airlines Co., 2016 WL 3091998, at *4-5
7    (N.D. Cal. June 2, 2016) (citing cases).

8    Third, the convenience of the witnesses weighs in favor of transfer. With respect
9    to employees, all of Epic's employee witnesses are located in the Western District of
10   Wisconsin (see Peterson Decl. ¶¶ 7, 13-22), and, as set forth above, the FAC identifies
11   two CureIS managers who reside in the Western District of Wisconsin and who, as the
12   only CureIS employees named in the FAC, appear to be CureIS's principal employee
13   witnesses. With respect to non-party witnesses, whose convenience is "accorded greater
14   weight" than that of employee witnesses, see Gundle Lining Constr. Corp. v. Fireman's
15   Fund Ins. Co., 844 F. Supp. 1163, 1166 (S.D. Texas 1994), the market for MCM software
16   in which CureIS competes and in which Epic is alleged to be engaging in anticompetitive
17   activity is alleged to be nationwide, meaning that, to the extent Epic's conduct is directed
18   at CureIS's former customers and prospective customers, those customers' employees
19   assumedly reside throughout the United States (see, e.g., FAC ¶ 69 (identifying non-
20   party witness in Illinois); Sawotin Decl. ¶ 12, FAC ¶ 55 (identifying non-party witness in
21   Colorado)). Additionally, the convenience of any such witnesses who reside outside the
22   subpoena power of both this District and the Western District of Wisconsin will not be
23   affected by a transfer, as such witnesses' testimony, irrespective of the district in which
24   the instant action is pending, is likely to be taken by a deposition offered at trial. See
25   Fed. R. Civ. P. 32(a)(4) (providing deposition testimony of person "more than 100 miles"
26   from court may be introduced at trial). Although a few non-party witnesses assertedly
27   work in this district (see, e.g., Sawotin Decl. ¶¶ 12-13 (identifying witness working in San
28   Francisco and witness working in Emeryville, California)), CureIS has not set forth the

5

expected testimony of any such witness in any detail, thus limiting their relevance to the instant motion, see Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1164-65 (S.D. Cal. 2005) (finding plaintiff failed to show witnesses would be inconvenienced by transfer where plaintiff "fail[ed] to establish that the[ ] witnesses [were] likely to have information relevant and material to the[ ] case"; noting "vague characterizations of [witnesses'] possible testimony d[id] not establish that the[ ] potential witnesses could provide important testimony"). Lastly, although CureIS has identified some non-party witnesses who work in California but outside this District, CureIS, again, has not identified with any specificity the expected testimony of any such person.[6]

Fourth, the ease of access to evidence weighs in favor of transfer. All of Epic's witnesses, as noted, are located in the Western District of Wisconsin, as are all relevant documents pertaining to its conduct. (See Peterson Decl. ¶¶ 8, 14, 23.) By contrast, documentary or other physical evidence to support CureIS's allegations that its "revenues have declined significantly" and "its growth trajectory has been stunted" (see FAC ¶ 106) assumedly would not be in this District, as it has no offices or employees here.

Fifth, the familiarity of each forum with the applicable law neither weighs in favor of nor against transfer. Four of the nine Claims for Relief are brought under federal law, which remains constant irrespective of the forum. Although three of the Claims for Relief are common law torts, no showing has been made that the laws of California and Wisconsin differ as to those three claims, and, although the remaining two Claims for Relief are statutory claims brought under California law, those statutory claims are based on federal and/or common law. (See FAC ¶¶ 177, 180-82, 185-90.) Given the above circumstances, courts in this District and courts in the Western District of Wisconsin would be equally familiar with the applicable law.

---

[6] Although witnesses who reside in California but beyond this District's subpoena power could be required to attend trial in this District if they "would not incur substantial expense," see Fed. R. Civ. P. 45(c)(1), neither CureIS nor Epic has addressed such possibility.

Sixth, the feasibility of consolidation of other claims is not addressed by either party, and, given that no potentially related case has been identified by either party, the Court does not further address this factor herein.

Seventh, the local interest in the controversy weighs in favor of transfer. Although CureIS alleges Epic has made false statements about CureIS to healthcare providers, some of whom are located in California and others in different states throughout the country, the "crux" of a case in which the defendant is alleged to have made false statements to consumers throughout the country is "the state where [the defendant] is headquartered and allegedly issued misrepresentations." See Hawkins v. Gerber Products Co., 924 F. Supp. 2d 1208, 1216 (C.D. 2013) (finding, where defendant allegedly made false statements to consumers in California and elsewhere, "local interest in the controversy" factor weighed in favor of transfer to district from which defendant made challenged statements; finding state in which defendant was located had "interest in preventing fraudulent practices by companies that conduct business in their state").

Eighth, statistics submitted by Epic show the Western District of Wisconsin is significantly less congested than the Northern District of California, given that, for the most recent one-year period for which statistics are available, the median time from filing to disposition in the Western District of Wisconsin is 7.3 months as compared to 20.5 months in this District. (See Moskowitz Decl. Ex. H, second unnumbered page.) Consequently, this factor weighs in favor of transfer, albeit only slightly. See Securities and Exchange Comm'n v. Christian Stanley, Inc., 2012 WL 13012496, at *4 (C.D. Cal. April 4, 2012) (holding "administrative considerations such as docket congestion are given little weight in this circuit in assessing the propriety of a § 1404(a) transfer") (internal quotation, citation, and alteration omitted).

In sum, one factor is inapplicable, one is neutral, five weigh in favor of transfer, and only one weighs, if at all, against transfer. Accordingly, the Court finds the requested transfer to the Western District of Wisconsin is appropriate.

//

**CONCLUSION**

For the reasons stated, Epic's motion to transfer is hereby GRANTED, and the Clerk of Court is hereby DIRECTED to transfer the above-titled action to the Western District of Wisconsin.

**IT IS SO ORDERED.**

Dated: November 26, 2025

MAXINE M. CHESNEY
United States District Judge