# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

CureIS Healthcare, Inc.,

                              Plaintiff,

vs.

Epic Systems Corporation,

                              Defendant.

Civil Action No. 3:25-cv-00991-JDP

**REDACTED**

## DEFENDANT EPIC SYSTEMS CORPORATION'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO STAY DISCOVERY

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT .........................................................................................................................5

I.      A Stay Will Reduce the Burden of Litigation on the Parties and the Court. .......................6

II.     A Stay Will Simplify the Issues and Streamline the Trial, and May Render Discovery Entirely Unnecessary. ......................................................................................12

III.    CureIS Will Not Be Unduly Prejudiced by a Temporary Stay of Discovery. ...................16

CONCLUSION ....................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acantha LLC v. Depuy Synthes Sales Inc.*,
2016 WL 8201780 (E.D. Wis. June 6, 2016)................................................17

*Crowley v. Crowley*,
2025 WL 2605945 (S.D. Ind. Aug. 6, 2025) ..............................................12

*DSM Desotech Inc. v. 3D Sys. Corp.*,
2008 WL 4812440 (N.D. Ill. Oct. 28, 2008)................................7, 10, 17

*In re Sulfuric Acid Antitrust Litig.*,
231 F.R.D. 331 (N.D. Ill. 2005)................................................................6, 7

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*,
2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009)...............................................7

*Jones v. City of Elkhart*,
737 F.3d 1107 (7th Cir. 2013) ....................................................................5

*Liggins v. Reicks*,
2021 WL 2853359 (N.D. Ill. July 8, 2021)................................................12

*Lord v. PDD Holdings, Inc.*,
2024 WL 5432081 (N.D. Ill. Feb. 28, 2024) ................................11, 12, 13

*Nexstar Broad., Inc. v. Granite Broad. Corp.*,
2011 WL 4345432 (N.D. Ind. Sept. 15, 2011) ...............................6, 7, 13

*Omnireps, LLC v. CDW Corp.*,
2024 WL 2052069 (N.D. Ill. May 8, 2024) ...................................... passim

*Particle Health Inc. v. Epic Sys. Corp.*,
2025 WL 2581579 (S.D.N.Y. Sept. 5, 2025)................................2, 12, 16

*Rao v. JPMorgan Chase Bank, N.A.*,
2021 WL 4927415 (N.D. Ill. May 12, 2021)..............................................13

*Rodriguez v. Ford Motor Co.*,
2022 WL 704780 (N.D. Ill. Mar. 9, 2022)................................12, 13, 17

*Su v. Su*,
2022 WL 22877455 (N.D. Ill. Apr. 11, 2022).............................11, 12, 17

*Syrstad v. NECA-IBEW Welfare Tr. Fund*,
2022 WL 22876269 (E.D. Wis. Aug. 31, 2022) ..........................................13

*Top Rank, Inc. v. Haymon*,
  2015 WL 9952887 (C.D. Cal. Sept. 17, 2015) ........................................................................7

*U.S.A. Dawgs, Inc. v. Snyder*,
  2017 WL 219329 (D. Colo. Jan. 18, 2017) ............................................................................7

*Viehweg v. City of Mount Olive*,
  2021 WL 4432821 (C.D. Ill. Sept. 27, 2021) ......................................................................15

*Vital Proteins, LLC v. Ancient Brands, LLC*,
  2023 WL 5671857 (N.D. Ill. Sept. 1, 2023) ................................................................. passim

**Statutes & Rules**

28 U.S.C. § 1404(a) ...............................................................................................................3

Federal Rule of Civil Procedure 9(b) ..................................................................................15

Federal Rule of Civil Procedure 26(a)(1)(C) .......................................................................4

Federal Rule of Civil Procedure 26(c) ...............................................................................1, 5

Federal Rule of Civil Procedure 26(d) .................................................................................5

Federal Rule of Civil Procedure 26(f) ..................................................................................4

**Other Authorities**

Letter from Hon. Naomi Reice Buchwald to Adam Wolfson,
  *Particle Health Inc. v. Epic Sys. Corp.*, No. 24 Civ. 7174 (S.D.N.Y. Mar. 21, 2025),
  Dkt. No. 36 .......................................................................................................................2, 12

Standing Order for Preliminary Pretrial Conferences with U.S. Magistrate Judge Anita
  Marie Boor (W.D. Wis. May 7, 2024) ................................................................................6

Pursuant to Federal Rule of Civil Procedure 26(c), Defendant Epic Systems Corporation ("Epic") moves to stay discovery pending resolution of its concurrently filed motion to dismiss Plaintiff CureIS Healthcare, Inc.'s ("CureIS") First Amended Complaint (Dkt. No. 81), which will be fully briefed in less than two months. The parties have met and conferred (Moskowitz Decl. ¶¶ 8, 10), and CureIS opposes Epic's request (*id.* ¶ 14).

## **INTRODUCTION**

CureIS's First Amended Complaint (the "Amended Complaint" or "¶") asserts nine distinct claims ranging from antitrust, to defamation and trade libel, to false advertising, to tortious interference with six distinct contractual or prospective relationships based on factual allegations that sweep across Epic's large and complex business and implicate numerous third parties. The antitrust claims alone arise under two different provisions of the Sherman Act, encompass two alleged markets, involve multiple Epic product categories, and advance three distinct theories of anticompetitive conduct. Many courts, including the Supreme Court itself, have recognized the particularly acute burdens imposed by discovery in antitrust cases. And CureIS already served 48 broad document requests seeking documents from nearly every corner of Epic's business covering a time period of eight years.

Epic moved to dismiss the Amended Complaint in its entirety, raising multiple, distinct arguments demonstrating that each of CureIS's claims fails as a matter of law. (Dkt. No. 81.) Epic recognizes that stays pending motions to dismiss are the exception and not the rule in this Court. But this case warrants an exception—at a minimum, the Court's resolution of Epic's motion to dismiss could substantially narrow the claims that will be litigated. In that event, categories of potentially expensive and time-consuming discovery would be rendered entirely irrelevant to this litigation, and remaining discovery, if any, would be narrowed, including with

respect to third-party and expert discovery, which would allow for a more streamlined pre-trial and trial schedule.

Epic respectfully requests a stay of discovery until Epic's motion to dismiss is decided. The benefits of a stay are illustrated by an analogous case against Epic brought by a plaintiff represented by the same counsel who represents CureIS. There, in the District Court for the Southern District of New York, the plaintiff brought a similar wide-ranging set of claims, including antitrust claims, against Epic. *See Particle Health Inc. v. Epic Sys. Corp.*, 2025 WL 2581579, at *6 (S.D.N.Y. Sept. 5, 2025). The court stayed discovery pending a decision on Epic's motion to dismiss. (*See* Letter from Hon. Naomi Reice Buchwald to Adam Wolfson, *Particle Health Inc. v. Epic Sys. Corp.*, No. 24 Civ. 7174 (S.D.N.Y. Mar. 21, 2025), Dkt. No. 36.) In ruling on the motion to dismiss, the court dismissed the majority of the plaintiff's claims and permitted only an initial phase of "narrow" and "limited" discovery to proceed on three factual issues related to the subset of antitrust claims that the court was not able to resolve at the motion to dismiss stage. *Particle Health*, 2025 WL 2581579, at *11, *23. This approach significantly narrowed the scope of discovery in that case and streamlined the case as a whole.

Similarly here, there is no prejudice to CureIS from a brief stay, and there is a significant potential upside of reduced burden on the parties, third parties, and the Court—not just in the short term but for the entire case—for which the resolution of the motion to dismiss is likely to pave the way. A stay pending the Court's decision on Epic's motion to dismiss is warranted.

## **BACKGROUND**[1]

The background and facts of this case are set forth more fully in Epic's concurrently filed motion to dismiss. (*See* Dkt. No. 81.) CureIS filed the initial complaint (the "Complaint") in

---

[1] Unless otherwise noted, all emphasis is added, and citations and internal quotations are omitted.

this Action in the District Court for the Northern District of California (the "N.D. Cal. Court") on May 12, 2025, alleging claims for tortious interference with contractual relations, tortious interference with prospective economic advantage, trade libel, and violations of the Defend Trade Secrets Act, the Lanham Act, and California's Unfair Competition Law and False Advertising Law. (Dkt. No. 1 ¶¶ 101-63.) The Complaint contained no federal antitrust claims. (*Id.*) On May 27, 2025, the N.D. Cal. Court scheduled the Initial Case Management Conference for August 29, 2025. (Dkt. No. 16.)

On June 17, 2025, Epic filed a Motion to Transfer Venue to the Western District of Wisconsin Pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 22.)

On June 27, 2025, before Epic responded to the Complaint, CureIS informed Epic that it intended to amend its Complaint to add one or more antitrust claims and potentially expand on the factual allegations in the Complaint. (Moskowitz Decl. ¶ 7.) The parties met and conferred on July 2, 2025. (Moskowitz Decl. ¶ 8.) Counsel for Epic stated Epic's positions that discovery should be stayed pending the Court's resolution of Epic's then-anticipated motion to dismiss the then-forthcoming Amended Complaint, and that the Initial Case Management Conference scheduled on August 29, 2025 should be continued given that the motion to dismiss the yet-to-be filed Amended Complaint would not be due until after that date pursuant to the briefing schedule that the parties were negotiating. (*Id.*) In response, counsel for CureIS represented that CureIS would not agree to either a temporary stay of discovery or a request for a continuance of the Initial Case Management Conference. (*Id.*)

On July 3, 2025, the parties jointly stipulated to a proposed deadline for CureIS to file its Amended Complaint and a proposed briefing schedule for Epic's motion to dismiss (Dkt. No. 32), which the N.D. Cal. Court approved on July 7, 2025 (Dkt. No. 33).

On July 14, 2025, CureIS filed its Amended Complaint, which, among other things, for the first time asserted antitrust claims under Sections 1 and 2 of the Sherman Act and removed CureIS's Defend Trade Secrets Act claim.  (Dkt. No. 37.)

On July 22, 2025, counsel for CureIS contacted counsel for Epic proposing that the parties confer pursuant to Federal Rule of Civil Procedure 26(f).  (Moskowitz Decl. ¶ 9.)  Epic's counsel responded indicating that, without prejudice to its position that discovery should be stayed, Epic would comply with its obligations and participate in a Rule 26(f) conference on August 8, 2025 (*i.e.*, 21 days prior to the then-scheduled August 29, 2025 Initial Case Management Conference).  (*Id.*)

On August 8, 2025, the parties participated in a Rule 26(f) conference.  (Moskowitz Decl. ¶ 10.)  During that conference, counsel for Epic reiterated its position that discovery should be stayed pending the Court's resolution of Epic's then-forthcoming motion to dismiss.  (*Id.*)  In response, counsel for CureIS represented that CureIS wanted to commence discovery immediately, would oppose any motion to stay discovery, and would be serving discovery and providing a draft protective order and e-discovery order for Epic's review soon thereafter.  (*Id.*)

On August 19, 2025, "[i]n light of [Epic's] pending motion to transfer", the N.D. Cal. Court continued the Initial Case Management Conference scheduled on August 29, 2025 to October 24, 2025.  (Dkt. No. 63.)

On August 22, 2025, the parties exchanged initial disclosures 14 days after their Rule 26(f) conference pursuant to Federal Rule of Civil Procedure 26(a)(1)(C).  (Moskowitz Decl. ¶ 11; *see also* Moskowitz Decl., Exs. B, C.)

On August 25, 2025, CureIS served its First Set of Requests for Production to Epic, which included 48 requests seeking documents from over an eight-year period.  (Moskowitz

Decl. ¶ 12; *see also* Moskowitz Decl., Ex. D.)  CureIS has yet to send a draft protective order or e-discovery order for Epic's review.  (Moskowitz Decl. ¶ 13.)

On September 5, 2025, the N.D. Cal. Court vacated Epic's deadline to answer or otherwise respond to the Amended Complaint pending resolution of Epic's then-pending motion to transfer.  (Dkt. No. 67.)

On October 15, 2025, the N.D. Cal. Court continued the Initial Case Management Conference scheduled on October 24, 2025 to December 19, 2025.  (Dkt. No. 68.)

On November 26, 2025, the N.D. Cal. Court granted Epic's motion to transfer.  (Dkt. No. 70.)  This case was subsequently transferred to the Western District of Wisconsin on December 3, 2025.  (Dkt. No. 72.)

On December 10, 2025, counsel for Epic informed counsel for CureIS that Epic intended to file a motion to stay discovery pending resolution of its forthcoming motion to dismiss on December 19, 2025, and asked counsel for CureIS to confirm whether CureIS's position that it would oppose any motion to stay discovery had changed or if CureIS would like to meet and confer again on the subject.  (Moskowitz Decl. ¶ 14.)  Counsel for CureIS responded that same day confirming that CureIS would oppose any motion to stay discovery.  (*Id.*)

On December 19, 2025, Epic filed its motion to dismiss.  (Dkt. No. 81.)  The Court has not yet entered any scheduling order or otherwise set any deadlines.

## ARGUMENT

"[M]agistrate and district courts enjoy extremely broad discretion in controlling discovery".  *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013).  Accordingly, pursuant to the Federal Rules of Civil Procedure, "a court may, 'for good cause,' limit the scope of discovery and control its sequence to protect from 'undue burden or expense'".  *Omnireps, LLC v. CDW Corp.*, 2024 WL 2052069, at *1 (N.D. Ill. May 8, 2024) (quoting Fed. R. Civ.

P. 26(c)-(d)).  Epic recognizes that the filing of a motion to dismiss does not automatically stay discovery (*see* Standing Order for Preliminary Pretrial Conferences with U.S. Magistrate Judge Anita Marie Boor at 2 (W.D. Wis. May 7, 2024)), and that stays pending a motion to dismiss decision are not often granted in this District.  However, broad sweeping antitrust complaints such as this one are the quintessential exception to that general rule in this Circuit:  "[n]umerous cases in this circuit have allowed stays in the face of a Rule 12(b)(6) challenge", and "stays are granted with substantial frequency" in antitrust cases.  *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005) (collecting cases).

Courts consider a variety of factors in deciding whether to stay discovery pending resolution of a motion to dismiss, including:  "whether a stay will reduce the burden of litigation on the parties and on the court", "whether a stay will simplify the issues in question and streamline the trial", and "whether a stay will unduly prejudice or tactically disadvantage the non-moving party".  *Omnireps*, 2024 WL 2052069, at *2.  All of these factors weigh in favor of a stay under the specific circumstances of this case.

## I.      A Stay Will Reduce the Burden of Litigation on the Parties and the Court.

"To avoid the cost and burden of potentially unnecessary discovery, courts frequently stay discovery pending a motion to dismiss the complaint where discovery may be especially burdensome and costly to the parties".  *Vital Proteins, LLC v. Ancient Brands, LLC*, 2023 WL 5671857, at *3 (N.D. Ill. Sept. 1, 2023) (cleaned up).  Given the complex nature of both the claims asserted by CureIS and the facts alleged to support them, proceeding with discovery would impose unusually large burdens on the parties and on the Court.  "Discovery concerns are particularly great in antitrust litigation, where discovery can quickly become enormously expensive and burdensome to defendants".  *Nexstar Broad., Inc. v. Granite Broad. Corp.*, 2011 WL 4345432, at *2 (N.D. Ind. Sept. 15, 2011).  Indeed, the Supreme Court itself expressly

"recognized this concern in *Bell Atlantic Corp. v. Twombly*", and "[s]ince *Twombly*, Seventh Circuit courts have taken this concern seriously, staying discovery in antitrust litigation and other complex cases". *Id.* at *2-3 (collecting cases); *accord In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 336 (observing, in an antitrust case, that stays of discovery "are granted with substantial frequency"). Furthermore, courts recognize that where "not one, but multiple independent theories of antitrust liability have been presented, the potential burden on defendants will likely be even higher, as the scope of discovery must be further broadened to encompass each type of anticompetitive action alleged". *DSM Desotech Inc. v. 3D Sys. Corp.*, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008).[2]

That is precisely the situation presented here. The antitrust claims alone, which represent only a subset of the nine claims raised in the Amended Complaint, are exceedingly broad, such that proceeding with discovery based on the Amended Complaint as it stands would be "especially burdensome and costly to the parties". *Vital Proteins*, 2023 WL 5671857, at *3. CureIS's wide-ranging antitrust claims plead two purportedly distinct alleged antitrust product markets—core administrative processing system software and "managed care middleware" software.[3] (¶¶ 32-45.) CureIS's discovery requests therefore seek discovery covering multiple distinct product verticals, multiplying the burden they would impose. (*See generally* Moskowitz Decl., Ex. D.) CureIS also advances multiple distinct theories of alleged anticompetitive conduct

---

[2] For similar reasons, courts outside the Seventh Circuit have concluded that "[s]taying discovery in antitrust cases pending the resolution of a motion to dismiss may be particularly appropriate". *Top Rank, Inc. v. Haymon*, 2015 WL 9952887, at *2 (C.D. Cal. Sept. 17, 2015); *accord, e.g.*, *U.S.A. Dawgs, Inc. v. Snyder*, 2017 WL 219329 (D. Colo. Jan. 18, 2017) (staying discovery in antitrust case); *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009) (same).

[3] CureIS alleges the existence of a third product market for electronic health record software (¶¶ 21-31) and has sought discovery into such software (*e.g.*, Moskowitz Decl., Ex. D at 7-9 (Requests 6, 9-11, 14-15, and 17)), but none of its antitrust claims is based on that purported market (¶¶ 114, 123, 133).

in the Amended Complaint (*e.g.*, ¶¶ 51, 122), which implicate entirely distinct aspects of Epic's business ranging from its marketing efforts to existing customers (*e.g.*, ¶ 98), to its data-security and patient-privacy policies (*e.g.*, ¶ 90), to its processes for onboarding new customers and integrating Epic software into their existing systems (*e.g.*, ¶ 54). Given the differences among these areas, CureIS's discovery requests will involve multiple distinct sets of Epic documents and employees related to these different business functions and will seek extensive access to highly sensitive business information with respect to each.

The non-antitrust claims asserted by CureIS also significantly contribute to the expected burden on the parties, third-parties, and the Court. The Amended Complaint asserts six separate statutory and common-law claims that will require significant, burdensome discovery in their own right. For example, CureIS asserts tortious interference with prospective business relations claims pertaining to its relationships with four existing and prospective customers (¶ 156), trade libel claims pertaining to its relationships with a subset of four of those customers (¶ 164), and tortious interference with contract claims pertaining to a distinct and only partially overlapping group of three customers (¶ 150). These different claims are premised on distinct narratives corresponding to distinct customers (*see generally* ¶¶ 52-89), which will require distinct discovery not just of Epic but of numerous third parties. CureIS also asserts claims under the Lanham Act (and overlapping California statutes) premised on allegations of false and misleading "commercial statements" disseminated through various media of communication (¶¶ 170, 172), adding yet another topic to the subject matter of this case. (¶¶ 180-82.) Epic anticipates that, based on these six claims, CureIS will comprehensively seek sensitive and confidential commercial information from across the full scope of Epic's business.

CureIS has already attempted—even as Epic sought to transfer this case to a more convenient forum—to impose considerable discovery burdens through its first set of 48 distinct requests for production of documents, which seek a vast swath of documents from an eight-year period between January 1, 2018 and the present. (*See* Moskowitz Decl., Ex. D at 4, 6-13.) These requests cover both Epic's Tapestry software and its electronic health record software. They further extend to the vague and ill-defined category of "Epic's Ancillary Payer Products", which CureIS uses to seek multiple categories of documents relating to "any software, tool, service, feature, or module—whether optional, integrated, or separately licensed—that is designed to be used with, or connected to, Epic's Tapestry platform, including, but not limited to, products or services related to billing, care management, population health, risk adjustment, utilization management, reporting, decision support, data monitoring, data storage, interoperability, or aggregation services". (*Id.* at 3.) Left unchecked, this extensive catalogue of use cases extends to an exceedingly broad range of Epic's software products, ranging from Care Everywhere, an interoperability platform that supports millions of patient record exchanges each month, to Chronicles, Epic's complete database management system that underlies all of Epic's applications. And CureIS seeks multiple categories of documents pertaining to each type of Epic product, including "all" or "any" documents related to market penetration and market share (*id.* at 7 (Requests 5-6)); revenue, profitability and other financial data (*id.* at 8 (Requests 12-15)); competition and actual, potential, or "perceived" competitors (*id.* at 8-9 (Requests 16-17)); sales and marketing materials (*id.* at 9 (Request 19)); data exchange with *any* third party that offers vague "services" to payers (*id.* at 10 (Request 25)); communications with actual or even "potential" customers about interoperability with multiple categories of Epic products (*id.* (Request 26)); compliance with the 21st Century Cures Act (*id.* at 10-11 (Requests 30-32)); data

sharing for multiple Epic products (*id.* at 11-13 (Requests 36-37, 42-44)); and data-reporting capacities across multiple Epic products (*id.* at 13 (Request 45)). This litany covers fewer than half of the document requests that CureIS has served to date. Courts recognize that comparable discovery burdens of similar magnitude justify staying discovery pending a motion to dismiss. *See, e.g.*, *Omnireps*, 2024 WL 2052069, at *3 (staying discovery given "*potentially* sweeping requests" for production of documents); *Vital Proteins*, 2023 WL 5671857, at *4 (noting "significant burden" of responding to "sweeping" requests for production of documents seeking "*all* documents and communication[s]" relating to various aspects of the products under dispute (emphasis in original)); *DSM Desotech*, 2008 WL 4812440, at *3 (staying discovery where "[t]he business records 3DS has been asked to produce span a period of at least eight years of activity"). To complete fact discovery, Epic expects that CureIS would seek to take depositions commensurate with the scope of its document requests.

Nor would the burdens of discovery in this case fall on the parties alone. CureIS's Amended Complaint contains extensive allegations identifying multiple existing and prospective CureIS customers that were allegedly targets of Epic's conduct. (¶¶ 52-84.) Before a single document has been produced, the parties' initial disclosures already disclose more than 15 entities that likely have discoverable information on which the parties may rely, including CureIS's customers, the parties' competitors, and industry research groups, as well as an unknown number of entities allegedly interested in acquiring CureIS. (Moskowitz Decl., Ex. B at 4-6, Ex. C at 3-4.) Moreover, given that CureIS's discovery requests encompass a broad range of Epic's software products, Epic expects that discovery of third-party competitors to these products will similarly be broad, and will involve a substantial amount of confidential third-party information. A short stay of discovery while the motion to dismiss remains pending will ensure

that these numerous third parties need not bear the burden of responding to discovery unless and until this Court determines which claims that are relevant to those third parties should proceed, if any. *See, e.g.*, *Su v. Su*, 2022 WL 22877455, at *2 (N.D. Ill. Apr. 11, 2022) (staying discovery given "subpoenas issued to third-parties" to "minimize the burden to those third-parties until it is determined whether this case will proceed"). Particularly since the CureIS customers and potential customers referenced in the Amended Complaint fall under different claims and are the subject of different allegations, the Court's ruling on the motion to dismiss may well render a subset (or all) of those customers irrelevant to the resolution of this case, such that allowing discovery to proceed now could cause them to bear the burdens of third-party discovery unnecessarily without advancing the resolution of this case.

Expert discovery will also exponentially increase the burden on the parties and the Court, much of which could prove unnecessary depending on how the Court rules on Epic's motion to dismiss. Given the sweeping nature of CureIS's antitrust allegations, Epic expects there to be multiple expert witnesses to opine on the economic significance of the multiple alleged relevant antitrust markets and of Epic's multiple forms of allegedly anticompetitive conduct.

Finally, commencing discovery will also impose burdens on the Court, which would be required to expend time and effort to resolve any disputes that might arise between the parties over the scope of discovery—disputes that will be substantial given the breadth and scope of the discovery requests CureIS has already served, and the highly sensitive and confidential nature of the business information that will be sought from each of the parties (and from third parties). Recognizing that this Court is a "self-help" Court, Epic expects that the discovery motions would come early to allow both sides to prepare for summary judgment briefing. These expected burdens on the Court also favor granting a stay. *E.g.*, *Lord v. PDD Holdings, Inc.*, 2024 WL

5432081, at *3 (N.D. Ill. Feb. 28, 2024) (finding burden favored a stay where "the briefs reveal that the scope of discovery appears to be very [sic] and the disputes already manifold"); *Vital Proteins*, 2023 WL 5671857, at *4 (noting that "the Court would be required to expend judicial resources to resolve disputes regarding the scope of the discovery at issue"); *Su*, 2022 WL 22877455, at *2 (noting the "multiple discovery disputes pending before this Court" in finding that the burden factor favored a stay).

The discovery CureIS will seek into these wide-ranging allegations would impose substantial burdens on Epic, third parties, and the Court. Just as in *Particle*, where the District Court for the Southern District of New York granted Epic's similar request for a discovery stay over the plaintiff's objection (*see* Letter from Hon. Naomi Reice Buchwald to Adam Wolfson, *Particle Health*, No. 24 Civ. 7174, Dkt. No. 36), and then significantly narrowed discovery after dismissing the majority of claims, *Particle Health*, 2025 WL 2581579, at *11, *23, those burdens justify the grant of a stay here.

## II.     A Stay Will Simplify the Issues and Streamline the Trial, and May Render Discovery Entirely Unnecessary.

A stay of discovery is further appropriate because it will simplify and streamline the issues in question in this case by allowing them to be resolved in full with no discovery at all. *E.g.*, *Crowley v. Crowley*, 2025 WL 2605945, at *2 (S.D. Ind. Aug. 6, 2025) (explaining that where "the pending motion to dismiss could dispose of this case in whole or in part . . . a stay would simplify the issues"); *Lord*, 2024 WL 5432081, at *2 (explaining that discovery stays are "often appropriate where the motion to dismiss can resolve the case"); *Rodriguez v. Ford Motor Co.*, 2022 WL 704780, at *1 (N.D. Ill. Mar. 9, 2022) (finding that "the fact that the issues raised could potentially be dispositive weighs in favor of staying discovery"); *Liggins v. Reicks*, 2021 WL 2853359, at *3 (N.D. Ill. July 8, 2021) (finding that "[t]his factor weighs in favor of a stay

because the costs and burdens of discovery may prove unnecessary if the motion to dismiss is granted"); *Nexstar Broad.*, 2011 WL 4345432, at *3 (finding that "[i]f Granite's motion is granted, all of Nexstar's claims would be dismissed, and the case could be resolved completely").

Moreover, Epic's motion to dismiss advances multiple distinct and independent arguments identifying fatal flaws in multiple aspects of each of CureIS's claims, including each alleged relevant product market, each type of allegedly anticompetitive conduct, and each customer relationship allegedly disrupted by Epic's actions. Courts in this Circuit "consider the numerosity and substantiality of the bases for dismissal raised when determining whether a stay is warranted". *Omnireps*, 2024 WL 2052069, at *2; *see also Rao v. JPMorgan Chase Bank, N.A.*, 2021 WL 4927415, at *1 (N.D. Ill. May 12, 2021) (granting stay in light of "the numerosity and substantiality of the bases for dismissal raised in the motion"). Even if the Court were to grant Epic's motion to dismiss in part, the Court's ruling could dramatically reduce the scope of discovery in multiple distinct ways, allowing whatever discovery remains and the case as a whole to proceed with considerably greater efficiency. *Syrstad v. NECA-IBEW Welfare Tr. Fund*, 2022 WL 22876269, at *6 (E.D. Wis. Aug. 31, 2022) (recognizing that "[t]his case is at an early stage, and resolving the issues raised by the motions is likely to simplify the issues"); *see also Lord*, 2024 WL 5432081, at *3 (finding that "[p]ushing forward with costly and time-consuming discovery while these motions are pending does not make sense, particularly when the resolution of the pending motions may significantly narrow the parties and/or issues for discovery"); *Rodriguez*, 2022 WL 704780, at *2 (stating that "[t]he ruling on any part of the motion to dismiss . . . has potential to dispose of certain claims brought by Rodriguez, making discovery unnecessary, or, at least narrowing its scope"); *Rao*, 2021 WL 4927415, at *1 (finding

that "staying discovery could simplify the issues in the case by waiting to see which issues remain after the motion to dismiss is decided" (cleaned up)). Indeed, certain proposed product markets, types of alleged conduct, or customers could drop out of the case entirely, thereby simplifying the issues in question and streamlining the discovery and any trial potentially required to resolve them.

If the Court dismisses CureIS's antitrust claims, its ruling would eliminate the need for wide-ranging discovery into the existence and scope of the two alleged antitrust markets, considerably reducing the burdens of discovery into third-party competitors or customers of Epic or CureIS in those markets, as well as reducing the scope of (or potentially eliminating) expert discovery in the case. The irrelevance of these entire categories of evidence would not only streamline discovery but would also streamline summary judgment briefing and/or trial. As such, dismissing the antitrust claims could shorten both the entire calendar for this case and any trial that may prove necessary. Even dismissing the antitrust claims in part could limit the scope of discovery. For example, a ruling that CureIS has failed to adequately plead certain alleged relevant antitrust markets would eliminate the need for discovery as to the competitors and customers in that specific market, and a ruling that CureIS has failed to plausibly allege certain types of anticompetitive conduct would eliminate the need for discovery into those aspects of Epic's business.

Moreover, because CureIS's tort and statutory claims allege that Epic harmed multiple distinct customer relationships through multiple different types of purported activity, a partial dismissal of those claims could likewise reduce the scope of discovery and of any trial. While some of the arguments Epic raises apply to all such claims, Epic also raises distinct arguments as to certain of those claims. For example, CureIS asserts each of its tort claims with respect to

multiple customer relationships by pleading different facts about each such customer, and the Court may accept only some of Epic's arguments that those allegations fail to state a claim (*see* Dkt. No. 81, §§ II.A-C), thereby allowing the claims to proceed as to some customers but not others.  Similarly, only certain actions alleged to constitute tortious interference or trade libel occurred before the relevant limitations periods.  (*See id.*)  Dismissing the tortious interference and trade libel claims with respect to any one of the individual customers referenced in the Amended Complaint could obviate the need for third-party discovery concerning that particular customer.  And courts have expressly recognized that a stay is appropriate when dismissal is sought based on "whether the claims are within the statute of limitation".  *Omnireps*, 2024 WL 2052069, at *2; *see also, e.g.*, *Viehweg v. City of Mount Olive*, 2021 WL 4432821, at *1 (C.D. Ill. Sept. 27, 2021) (granting stay where defendants "raise the statute of limitations as a defense to some of the claims").  Epic's motion to dismiss also argues that multiple of CureIS's statutory claims must be dismissed because its allegations are not pleaded with the particularity required by Federal Rule of Civil Procedure 9(b).  (*See* Dkt. No. 81, §§ I.D.2, II.D-E.)  And courts similarly recognize that a stay is appropriate where a motion to dismiss "allege[s] a failure to satisfy Rule 9(b)".  *Omnireps*, 2024 WL 2052069, at *2; *see also Vital Proteins*, 2023 WL 5671857, at *6 (explaining that allowing discovery given "questions regarding whether Ancient Nutrition has pled its counterclaims in compliance with Rule 9(b)'s standard . . . . would undercut the purposes of Rule 9(b)").

Given the complexity of CureIS's interlocking claims and the multiple arguments Epic advances for dismissing them, the different potential resolutions of the motion to dismiss would correspondingly narrow discovery and the case as a whole in different ways.  The potential for increased efficiency and reduced costs from narrowing discovery and streamlining any eventual

trial would be significantly reduced if full-blown discovery has already commenced before the Court has ruled on the motion to dismiss.

Once again, a comparison with *Particle Health* illuminates the benefits of a discovery stay here. In *Particle Health*, Epic filed a motion to dismiss advancing multiple distinct and independent arguments for dismissing each of the plaintiff's nine claims. 2025 WL 2581579, at *6. The court ultimately granted the motion in substantial part, dismissing the majority of those claims. *Id.* at *23. And because discovery had been stayed, the parties had not wasted time, money, and effort by conducting discovery into the factual issues relevant only to those dismissed claims. In addition, the discovery stay benefitted third parties who would have been central to many of the dismissed claims, which, like here, alleged that Epic had (1) entered into anticompetitive agreements with multiple third parties, and (2) defamed the plaintiff and tortiously interfered with its business relations with prospective third-party customers. *Id.* at *1-6. The discovery stay ensured that those third parties were not burdened with unnecessary discovery pertaining to legally invalid claims. And the court further streamlined the issues in deciding the motion to dismiss by continuing to stay broad discovery and ordering the parties instead to conduct only "limited" discovery into three "narrow" factual issues related solely to the alleged relevant market pleaded in that complaint, following which "the [c]ourt may re-evaluate Particle's claims with the benefit of a fuller record". *Id.* at *11.

Here too, staying discovery would allow the Court to streamline the issues in dispute, thereby allowing the case to proceed (if at all) more efficiently for the parties, third parties, and the Court on any issues that remain.

### III.  CureIS Will Not Be Unduly Prejudiced by a Temporary Stay of Discovery.

A stay of discovery will not unduly prejudice CureIS. This case is in its infancy, and with the exception of CureIS's first set of document requests, which were effectively placed on

hold as soon as they were served pending resolution of Epic's motion to transfer, the parties have not yet engaged in discovery. *See, e.g.*, *Omnireps*, 2024 WL 2052069, at *2 & n.3 (describing case with pendency of fifteen months as being "largely in its early stages"). Nor has CureIS asserted any claim or concern that would warrant prompt discovery, such as for immediate injunctive relief or regarding the deterioration of evidence. *See Rodriguez*, 2022 WL 704780, at *1 (granting stay where plaintiff "has not identified any witnesses or documents that will be lost or no longer discoverable if discovery is stayed" and "seeks no immediate injunctive relief"); *DSM Desotech*, 2008 WL 4812440, at *3 (granting stay "[a]bsent circumstances presenting a compelling need for prompt discovery", such as if "provisional relief were being sought or if testimony needed to be preserved due to the ill health of a witness"). ███████

███████████████████████████████

███████████████████████

Moreover, the stay will not substantially delay the case, as Epic's motion to dismiss will be fully briefed in less than two months. In any event, "delay inherent in the stay generally is not considered undue prejudice". *Acantha LLC v. Depuy Synthes Sales Inc.*, 2016 WL 8201780, at *1 (E.D. Wis. June 6, 2016); *see also Su*, 2022 WL 22877455, at *1 (stating that "the general prejudice of having to wait for resolution is not a reason to deny a stay" (cleaned up)); *Omnireps*, 2024 WL 2052069, at *2 (finding that a "mere delay in plaintiff's ability to proceed to discovery caused by the stay amounts to little, if any, prejudice").

## CONCLUSION

For the foregoing reasons, in light of the substantial burdens that will be imposed on the parties, third parties and the Court by starting full-blown discovery before the motion to dismiss is decided, coupled with the likelihood that discovery and the case as a whole will be narrowed by the Court's resolution of Epic's motion to dismiss, and the lack of prejudice to CureIS that

would result from a temporary stay, Epic respectfully requests that the Court stay discovery pending its resolution of Epic's motion to dismiss.

Dated:  December 19, 2025

Respectfully submitted,

By:  _Lauren A. Moskowitz_

Lauren A. Moskowitz
Michael P. Addis
**Cravath, Swaine & Moore LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone:  (212) 474-1000
lmoskowitz@cravath.com
maddis@cravath.com

Matthew J. Duchemin
Bryce A. Loken
**Quarles & Brady LLP**
33 East Main Street, Suite 900
Madison, WI 53703
Telephone:  (608) 251-5000
matthew.duchemin@quarles.com
bryce.loken@quarles.com

_Attorneys for Defendant Epic Systems Corporation_

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 19, 2025, a true and correct copy of the foregoing with redactions to under seal information was served upon all counsel of record via CM/ECF system.  Further, a true, correct, and under seal copy of the foregoing was also served upon counsel of record via email.


*/s/ Madalyn Vaughn*
Madalyn Vaughn