# Exhibit D

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Adam Wolfson (Bar No. 262125)
2    adamwolfson@quinnemanuel.com
   Ryan S. Landes (Bar No. 252642)
3    ryanlandes@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California 90017-2543
   Telephone:    (213) 443-3000
5  Facsimile:    (213) 443-3100

6  Paulina Slagter (Bar No. 318559)
     paulinaslagter@quinnemanuel.com
7  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, CA 94065
8  Telephone:    (650) 801 5000
   Facsimile:    (650) 801 5100

9  *Attorneys for Plaintiff CureIS Healthcare, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CureIS Healthcare, Inc., | Case No. 3:25-cv-04108-MMC |
| Plaintiff, | **PLAINTIFF CUREIS HEALTHCARE INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT EPIC SYSTEMS CORPORATION** |
| vs. | |
| Epic Systems Corporation, | Judge:   Hon. Maxine M. Chesney |
| Defendant. | Action Filed:   May 12, 2025 |
| | Trial Date:   None Set |

### CUREIS'S FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of California ("Local Rules"), Plaintiff CureIS Healthcare, Inc. ("Plaintiff" or "CureIS"), by and through its undersigned counsel, hereby requests that Defendant Epic Systems Corporation ("Defendant" or "Epic") produce for inspection, examination and copying by Plaintiff, its attorneys, or others acting on Plaintiff's behalf, the following documents and things at the offices of Quinn Emanuel Urquhart & Sullivan, LLP located at 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017, by either: (1) a date set by the Court; or (2) no later than thirty (30) days after service of these requests, whichever date is earlier. These Requests are continuing in nature and impose upon Defendant the obligations stated in Rule 26(e) of the Federal Rules of Civil Procedure.

### DEFINITIONS

The following definitions shall apply to each of the Requests for Production herein:

1. "CAPS Software" shall refer to any core administrative processing system software, including Epic Tapestry, that health plans, managed care organizations, or other Payers use to determine whether a submitted healthcare claim should be approved, denied, partially paid, or flagged for further review, including but not limited to software that automates the end-to-end lifecycle of claims processing from intake through adjudication, payment, reporting, and payment recovery, and software that manages member enrollment.

2. "Communication" means, without limitation, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail.

3. "CureIS" and "Plaintiff" refer to CureIS Healthcare, Inc. and its divisions, subsidiaries, parents, affiliates, predecessors, predecessors-in-interest, successors, and successors-in-interest, and any current and former employees, agents, advisors, and representatives, as well as any other Persons acting or purporting to act on behalf of the foregoing.

4. "CureIS's Customers" includes but is not limited to the customers identified in CureIS's First Amended Complaint.

5. "Cures Act" shall refer to the 21st Century Cures Act, Pub. L. 114–255.

6. "Document" includes, without limitation, all written, graphic or otherwise recorded material, including without limitation, microfilms or other film records or impressions, electronically stored information regardless of the form of storage medium, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electrical recording devices, including email, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original. The foregoing specifically includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

7. "EHRs" shall refer to electronic health records, electronic medical records, or any other form of healthcare-related patient data that is regularly generated, stored, maintained, edited, or shared using EHR software, including Epic's EHR software.

8. "EHR Software" shall mean software products provided to hospitals, providers, and other healthcare organizations to create, manage, store, and analyze patient information.

9. "Electronic Health Information" includes electronic protected health information as defined in 45 C.F.R. § 160.103, including but not limited to enrollment data, claims data, encounter data, and billing information.

10. "Epic EHRs" shall refer to any EHR (a) stored, generated, or otherwise maintained by a healthcare provider using Epic's EHR Software, and (b) in relation to which Epic holds any

right, permission, license, or responsibility to exercise any degree of control, practical or formal, under any circumstances, regardless of whether such EHRs are the property of Epic or whether Epic has ultimate decision-making power over the sharing or other use of such EHRs.

11. "Epic's Ancillary Payer Products" shall refer to any software, tool, service, feature, or module—whether optional, integrated, or separately licensed—that is designed to be used with, or connected to, Epic's Tapestry platform, including, but not limited to, products or services related to billing, care management, population health, risk adjustment, utilization management, reporting, decision support, data monitoring, data storage, interoperability, or aggregation services.

12. "Epic", "Defendant", "You", and/or "Your" shall refer to Epic Systems Corporation and its divisions, subsidiaries, parents, affiliates, predecessors, predecessors-in-interest, successors, successors-in-interest, and any current and former employees, agents, advisors, and representatives, as well as any other Persons acting or purporting to act on behalf of the foregoing.

13. "Epic-first Policy" shall refer to any policy, practice, requirement, or mandate—however named, and whether formal, informal, written, or unwritten—promoted, imposed, or encouraged by Epic that customers using Epic's EHR or CAPS Software: (a) use Epic's versions of other products if Epic offers such products, (b) refrain from adopting or integrating third-party products, whether or not they provide overlapping functionality; (c) discontinue or replace preexisting non-Epic tools in favor of Epic's offerings; and/or (d) offer Epic an opportunity to develop or replicate the functionality of non-Epic tools before implementing or contracting with such non-Epic solutions.

14. "Information Blocking" shall have the meaning ascribed to it by 42 U.S.C. § 300jj-52(a) and 45 C.F.R. § 171.103(a)(1) and shall include any practice that is likely to interfere with, prevent, or materially discourage access, exchange, or use of electronic health information.

15. "Integration" shall mean any technical connection, interface, data exchange, or interoperability between Epic's systems and non-Epic software or systems, including but not limited to application programming interface ("API") connections, file transfers, database queries, embedded workflows, data feeds, or any other mechanism or process for enabling access to, transmission of, or interaction with data across systems.

16. "Managed Care Middleware" or "MCM" shall refer to any software that operates between billing and encounters data to translate, reformat, or clean data within a provider's EHR software or a Payer's CAPS Software.

17. "Managed Care Organization" or "MCO" shall have the meaning ascribed to that term by the federal government. *See* https://www.medicaid.gov/medicaid/managed-care.

18. "Payer" shall refer to any company, organization, health plan, government entity, or other entity that regularly pays for healthcare services provided to other Persons, including any entity that offers health insurance, health plans, or other services that involve payment of healthcare costs on behalf of a patient.

19. "Person" means any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

20. "Provider-Sponsored Health Plan" and "PSHP" shall refer to any Payer that is affiliated with a health system, hospital, or other provider entity.

21. "Reflect," "reflecting," "relate to," "refer to," "relating to," "referring to", and "regarding" mean relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, demonstrating, describing, discussing, commenting on, comprising, embodying, responding to, supporting, contradicting, containing or constituting (in whole or in part), as the context makes appropriate.

22. "Relevant Time Period" shall refer to the period from January 1, 2018 continuing to the present.

23. "Switching Costs" shall mean all costs, monetary and non-monetary, associated with changing from one software vendor to another, including but not limited to: (a) software licensing fees, (b) implementation costs, (c) data migration expenses, (d) training costs, (e) productivity losses, (f) disruption to operations, or (g) contractual penalties.

24. "Tapestry" shall refer to all products or services Epic markets as Tapestry, component parts of Tapestry, or any bundled product offerings including Tapestry.

# INSTRUCTIONS

1. For all purposes herein, all spelling, syntax, grammar, abbreviations, idioms, and proper nouns shall be construed and interpreted to give proper meaning and consistency to their context.

2. The words "and" and "or," as used herein, shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these interrogatories any information which might be deemed outside their scope by any other construction.

3. The term "including," as used herein, shall mean "including without limitation."

4. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa.

5. Wherever appropriate, verb tenses shall be interpreted to include past, present, and future tenses. References to a gender shall be interpreted to include the masculine, feminine, and neuter. The use of defined terms in these Requests apply whether or not they are capitalized.

6. Each Request shall be fully complied with unless it is objected to in good faith, in which event the reasons for any objection shall be stated in detail. If an objection pertains to only a portion of a Request, or a word, phrase or clause contained within it, state the objection in detail to that portion only and to produce documents pursuant to the remainder of the Request, using Your best effort to do so.

7. These Requests are intended to cover all documents in Defendant's possession, custody or control, whether located at any of Defendant's offices or elsewhere. If any document was, but is no longer, in Defendant's possession or subject to Defendant's control, or in existence, state whether it: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred, voluntarily or involuntarily, to others (and if so, to whom); or (iv) has been disposed of in some other manner.

8. If Defendant asserts that any information responsive to any Request is privileged or otherwise protected from discovery, You shall provide a privilege log consistent with Fed. R. Civ. P. 26(b)(5) and any agreement between the parties regarding privilege logs.

9. These Requests are continuing in nature and Defendant's responses to them are to be promptly supplemented or amended if, after the time of its initial responses, Defendant learns that

any response is or has become in some material respect incomplete or incorrect, to the full extent provided for by Federal Rule of Civil Procedure 26(e).

10. Each Request should be construed independently. No Request should be construed by reference to any other Request for the purpose of limiting the scope of response to such Request.

11. Unless otherwise specified below, the relevant time period for these requests is the Relevant Time Period.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1**

Organizational charts, personnel directories, and other Documents sufficient to show Your organizational structure during the Relevant Time Period and to identify the names, positions, titles, duties, and any reporting relationships (as well as any changes over time to the same) of personnel with responsibility concerning: (1) Epic Tapestry, (2) Your competitive strategies to increase market penetration among PSHPs and/or Payers, (3) policies and practices related to EHR integration, customer data access, or non-Epic vendors that request access to Customer data stored in one or more of Epic's systems, and (4) the "Products You Should Replace with Epic" brochure (as described in paragraph 98 of the First Amended Complaint ("FAC")) or the design, implementation, or enforcement of an "Epic-first policy" or any similar policy requiring Epic's EHR software customers to use Epic's Ancillary Payer Products.

**REQUEST FOR PRODUCTION NO. 2**

Documents sufficient to show Your document or data retention and/or destruction policies, procedures, and practices, including but not limited to any departure or variance from those policies, procedures, and/or practices.

**REQUEST FOR PRODUCTION NO. 3**

All Documents and Communication referenced in Your F.R.C.P. 26(a)(1) initial disclosures, any interrogatory response pursuant to F.R.C.P. 33, or any request for admission response pursuant to F.R.C.P. 36.

**REQUEST FOR PRODUCTION NO. 4**

All Documents and Communication You consult, review, consider, or rely upon in preparing Your responses to any discovery requests served pursuant to F.R.C.P. 31, 33, 34, or 36.

**REQUEST FOR PRODUCTION NO. 5**

All Documents and Communications relating to: (a) internal analyses of Tapestry's market penetration (including but not limited to among PSHPs), (b) non-Epic analyses of Tapestry's market penetration (including but not limited to among PSHPs); (c) customer win/loss analyses for Tapestry, and (d) projections of Tapestry's future market share growth.

**REQUEST FOR PRODUCTION NO. 6**

All Documents and Communications relating to: (a) internal analyses of Epic's EHR Software market penetration, (b) non-Epic analyses of Epic's EHR Software market penetration; (c) customer win/loss analyses for Epic's EHR Software, and (d) projections of Epic's EHR Software future market share growth.

**REQUEST FOR PRODUCTION NO. 7**

All Documents and Communications relating to the number of PSHPs and MCOs utilizing Epic software that provides enrollment verification, encounter data validation, recovery billing, or automated letter generation functionality for managed care organizations.

**REQUEST FOR PRODUCTION NO. 8**

All Documents and Communications relating to the number of patients and/or health plan members covered by Epic software that provides enrollment verification, encounter data validation, recovery billing, or automated letter generation functionality for managed care organizations.

**REQUEST FOR PRODUCTION NO. 9**

All Documents and Communications relating to the number of providers, hospitals, health systems, academic medical systems, and MCOs utilizing Epic's EHR Software.

**REQUEST FOR PRODUCTION NO. 10**

All Documents and Communications relating to the number of patients in the United States with Epic EHRs in their medical history.

**REQUEST FOR PRODUCTION NO. 11**

All Documents and Communications relating to the number of patients in the United States with other companies' EHRs in their medical history.

**REQUEST FOR PRODUCTION NO. 12**

All Documents and Communications relating to the revenue, profitability, pricing, finances, or sales forecasting of Tapestry.

**REQUEST FOR PRODUCTION NO. 13**

All Documents and Communications relating to the revenue, profitability, pricing, finances, or sales forecasting of any product competing with Tapestry.

**REQUEST FOR PRODUCTION NO. 14**

All Documents and Communications relating to the revenue, profitability, pricing, finances, or sales forecasting of Epic's EHR Software.

**REQUEST FOR PRODUCTION NO. 15**

All Documents and Communications relating to the revenue, profitability, pricing, finances, or sales forecasting of products competing with Epic's EHR Software.

**REQUEST FOR PRODUCTION NO. 16**

All Documents and Communications discussing, referring to, or analyzing any actual or potential competitor to Tapestry (or Epic's Ancillary Payer Products), including, but not limited to: (1) reports and analyses of the market shares of Epic Tapestry and any perceived competitors, (2) reports, competitive intelligence, analyses, and evaluations of Tapestry's actual or potential competitors' EHR access, retrieval, aggregation, analysis, or other capabilities, (3) barriers to entry, and (4) evaluations of any actual or potential competitors' plans or potential products or services that compete or could compete with Epic Tapestry.

**REQUEST FOR PRODUCTION NO. 17**

All Documents and Communications discussing, referring to, or analyzing any actual or potential competitor to Epic's EHR software, including, but not limited to: (1) reports and analyses of the market shares of Epic's EHR software and any perceived competitors, (2) barriers to entry,

and (3) evaluations of any actual or potential competitors' plans or potential products or services that compete or could compete with Epic's EHR software.

**REQUEST FOR PRODUCTION NO. 18**

Documents and Communications relating to (1) any company's ability, inability, or failure to offer any data-agnostic service or software product (other than Tapestry) that integrates with Epic's EHR software and is marketed to Payers, and (2) any differences in price, quality, usefulness, capability, features, or functionality, between any such products or services and Tapestry.

**REQUEST FOR PRODUCTION NO. 19**

Any training materials, instructions, procedures, sales flyers, marketing materials, white papers, presentations, slide decks, or other promotional materials, or Communications about such Documents, discussing or referring to the features and capabilities of Epic Tapestry or Epic's Ancillary Payer Products.

**REQUEST FOR PRODUCTION NO. 20**

All Documents explaining how to install and/or operate Tapestry or Epic's Ancillary Payer Products, including, but not limited to, any operating manuals, technical documentation, help files, requirements documentation, architecture documentation, or user documentation, or Communications about such Documents.

**REQUEST FOR PRODUCTION NO. 21**

All versions of any webpages maintained created, controlled or owned by Epic that refer or relate to Epic Tapestry, including Communications about such Documents.

**REQUEST FOR PRODUCTION NO. 22**

All Documents and Communications discussing, reflecting, or referring to Epic's competitive strategies, plans, or objectives for Epic Tapestry.

**REQUEST FOR PRODUCTION NO. 23**

All Documents and Communications between Epic and CureIS.

**REQUEST FOR PRODUCTION NO. 24**

All Documents and Communications (including with any third party) discussing or referring to CureIS.

**REQUEST FOR PRODUCTION NO. 25**

All Documents relating to Epic's (or Epic's customers') integration, interfacing, or data exchange capabilities with any non-Epic vendor offering services to Payers.

**REQUEST FOR PRODUCTION NO. 26**

All Documents and Communications relating to discussions with actual or potential Epic customers regarding whether and to what extent other software they currently or plan to use can interoperate with Tapestry or Epic's Ancillary Payer Products.

**REQUEST FOR PRODUCTION NO. 27**

All Documents relating to Epic's contracts or other agreements with CureIS's Customers.

**REQUEST FOR PRODUCTION NO. 28**

All Documents and Communications discussing, reflecting, or referring to Epic's decisions, strategies, plans, objectives, and process in the creation and dissemination of the "Products You Should Replace with Epic" brochure (as described in paragraph 98 of the FAC).

**REQUEST FOR PRODUCTION NO. 29**

Documents sufficient to identify how many PSHP Customers, or non-Epic vendors working with PSHP Customers, Epic has denied access to Electronic Health Information due to: (a) purported data security concerns, or (b) Epic purportedly already offering the same (or similar) functionality in Epic's EHR Software and/or Tapestry.

**REQUEST FOR PRODUCTION NO. 30**

All Documents and Communications relating to Your training of employees to comply with the 21st Century Cures Act, including any policies, procedures, or practices for ensuring compliance, and any internal audits or compliance reviews.

**REQUEST FOR PRODUCTION NO. 31**

All Documents and Communications related to allegations, complaints, or inquiries that You engaged in any violation of the Cures Act, including but not limited to: any government investigations, inquiries, complaints, or enforcement actions regarding Epic's compliance with the Cures Act or allegations of Information Blocking.

**REQUEST FOR PRODUCTION NO. 32**

All Documents and Communications related to internal discussions or analyses regarding whether You engaged in any violation of the Cures Act, including but not limited to: any government investigations, inquiries, complaints, or enforcement actions regarding Epic's compliance with the Cures Act or allegations of Information Blocking.

**REQUEST FOR PRODUCTION NO. 33**

All Documents and Communications relating to any Epic-first Policy or similar policy requiring customers who use Epic's EHR Software or CAPS Software (including Tapestry) to use Epic's Ancillary Payer Products, including but not limited to: (a) documents identifying or discussing the Epic-first Policy, (b) internal guidance, talking points, or training materials regarding the Epic-first Policy, (c) Communications with customers regarding the Epic-first Policy, and (d) any exceptions or waivers granted.

**REQUEST FOR PRODUCTION NO. 34**

All Documents and Communications relating to any instance in which Epic required customers who use Epic's EHR Software or CAPS Software to only use Epic's Ancillary Payer Products (or otherwise stated in words or substance that they could only use Epic's Ancillary Payer Products).

**REQUEST FOR PRODUCTION NO. 35**

All Documents and Communications relating to any general policy or other documents discussing it is Epic's policy that customers who use Epic's EHR Software or CAPS Software can only use Epic's Ancillary Payer Products.

**REQUEST FOR PRODUCTION NO. 36**

All Documents and Communications relating to Epic's Workbench tool that discuss or refer to: (a) data access request permissions and denials, (b) data sharing capabilities, (c) integration requirements, and (d) any restrictions on third-party access.

**REQUEST FOR PRODUCTION NO. 37**

All Documents and Communications relating to Epic's Clarity tool that discuss or refer to: (a) data access request permissions and denials, (b) data sharing capabilities, (c) integration requirements, and (d) any restrictions on third-party access.

**REQUEST FOR PRODUCTION NO. 38**

All Documents and Communications relating to Epic's development or attempted development of products to compete with or replace another Person's or entity's: (a) enrollment verification software, (b) encounter data validation software, (c) recovery billing software, or (d) automated letter generation software for Payers.

**REQUEST FOR PRODUCTION NO. 39**

All Documents and Communications relating to any security assessments, reviews, or concerns Epic raised regarding CureIS or CureIS's products, including any documentation supporting such concerns.

**REQUEST FOR PRODUCTION NO. 40**

All Documents and Communications relating to Epic's denials of data access requests from CureIS or CureIS's Customers.

**REQUEST FOR PRODUCTION NO. 41**

All Documents and Communications relating to the impact of Managed Care Middleware on Switching Costs between different EHR and CAPS Software providers.

**REQUEST FOR PRODUCTION NO. 42**

Documents sufficient to identify how many non-Epic vendors Epic has granted access to real-time data in either Workbench, Chronicles, or Clarity and any Communications regarding the criteria used to evaluate and approve such access.

**REQUEST FOR PRODUCTION NO. 43**

All Documents and Communications relating to the instances where Epic has granted non-Epic vendors access to real-time data in either Workbench, Chronicles, or Clarity.

**REQUEST FOR PRODUCTION NO. 44**

All Documents and Communications reflecting questions or issues Epic raised with a third party regarding granting access to real-time data in either Workbench, Chronicles, or Clarity.

**REQUEST FOR PRODUCTION NO. 45**

All Documents and Communications relating to the differences between Epic's data reporting systems (including but not limited to Workbench and Clarity), including but not limited to: (a) data latency specifications, (b) data completeness comparisons, (c) access restrictions, (d) ability to read from and write data back to Epic's datastores, (e) internal reporting and documentation related to testing and validation of Epic's data reporting systems, and (f) limiting third-party vendors to Clarity access only.

**REQUEST FOR PRODUCTION NO. 46**

Documents and Communications sufficient to show the actual functionality and capabilities of Epic's products that Epic claims or has ever asserted can replace: (a) enrollment verification software, (b) encounter data validation software, (c) recovery billing software, (d) automated letter generation software, and (e) any other software that translates, cleans, and/or validates data inputs and outputs for CAPS software, including any gap analyses or feature comparisons.

**REQUEST FOR PRODUCTION NO. 47**

All Documents and Communications relating to Epic's identification or designation of CureIS as a direct competitor, including but not limited to: (a) internal memoranda or analyses identifying CureIS as a competitor, (b) competitive intelligence reports mentioning CureIS, and (c) Communications regarding CureIS's market position or customer relationships.

**REQUEST FOR PRODUCTION NO. 48**

All Documents and Communications relating to Epic's representations to CureIS's Customers that Epic could provide the same or substantially similar services to those that CureIS provided such customers, as described in paragraphs 55, 57, 59, 61, 77, and 84 of the FAC.

DATED:  August 25, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ Adam Wolfson
Adam Wolfson
*Attorneys for Plaintiff,*
*CureIS Healthcare, Inc.*

-14- Case No. 3:25-cv-04108-MMC

**PLAINTIFF CUREIS HEALTHCARE INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT EPIC SYSTEMS CORPORATION**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via email on August 25, 2025.

/s/ Paula C. Gonzalez____,
Paula C. Gonzalez