**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| CureIS Healthcare, Inc., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 3:25-cv-00991-JDP |
| v. | ) | |
| | ) | |
| Epic Systems Corporation | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFF CUREIS HEALTHCARE INC.'S OPPOSITION TO DEFENDANT
EPIC SYSTEM CORPORATION'S MOTION TO STAY DISCOVERY**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION .................................................................................................................5

RELEVANT FACTUAL BACKGROUND.............................................................................8

ARGUMENT......................................................................................................................10

     A.    The Significant Prejudice to CureIS Weighs Strongly Against a Stay.................11

     B.    Epic Fails to Establish That a Stay Will Reduce the Burden of Litigation............14

     C.    Epic Fails to Establish That a Stay Will Simplify the Issues................................20

CONCLUSION....................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Castrillon v. St. Vincent Hosp. & Health Care Ctr., Inc.*,
  2011 WL 4538089 (S.D. Ind. Sept. 29, 2011) ........................................................17

*CMG Worldwide Inc. v. Adidas Am., Inc.*,
  2018 WL 7140117 (S.D. Ind. Sept. 26, 2018) ...............................................12, 13

*Cohn v. Taco Bell Corp.*,
  147 F.R.D. 154 (N.D. Ill. 1993) ...........................................................................21

*Crowley v. Crowley*,
  2025 WL 2605945 (S.D. Ind. Aug. 6, 2025) ......................................................21

*DSM Desotech Inc. v. 3D Sys. Corp.*,
  2008 WL 4812440 (N.D. Ill. Oct. 28, 2008)........................................................15

*Forest River, Inc. v. Heartland Recreational Vehicles, LLC*,
  2012 WL 4049268 (N.D. Ind. Sept. 12, 2012) ....................................................14

*Grice Eng'g, Inc. v. JG Innovations, Inc.*,
  691 F. Supp. 2d 915 (W.D. Wis. 2010) ..........................................................11, 13

*Harper v. Central Wire, Inc.*,
  2020 WL 5230746 (N.D. Ill. Sept. 2, 2020) .......................................................17

*Hy Cite Corp. v. Regal Ware, Inc.*,
  2010 WL 2079866 (W.D. Wis. May 19, 2010) .............................................11, 12

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)..............................................................................................11

*Liggins v. Reicks*,
  2021 WL 2853359 (N.D. Ill. July 8, 2021)..........................................................21

*Lord v. PDD Holdings, Inc.*,
  2024 WL 5432081 (N.D. Ill. Feb. 28, 2024) .......................................................21

*Methodist Health Servs. Corp. v. OSF Healthcare Sys.*,
  2014 WL 1797674 (C.D. Ill. May 6, 2014) .........................................................14

*Nexstar Broad., Inc. v. Granite Broad. Corp.*,
  2011 WL 4345432 (N.D. Ind. Sept. 15, 2011) ....................................................21

*Nken v. Holder*,
    556 U.S. 418 (2009)................................................................................................11, 15

*Omnireps, LLC v. CDW Corp.*,
    2024 WL 2052069 (N.D. Ill. May 8, 2024) ..................................................................17

*Particle Health Inc. v. Epic Sys. Corp.*,
    2025 WL 2581579 (S.D.N.Y. Sept. 5, 2025)................................................18, 19, 22

*U.S. ex rel. Robinson v. Indiana Univ. Health Inc.*,
    2015 WL 3961221 (S.D. Ind. June 30, 2015) ..............................................................17

*Robinson v. Walgreen Co.*,
    2021 WL 2453069 (N.D. Ill. June 16, 2021) ..............................................11, 12, 13, 21

*SK Hand Tool Corp. v. Dresser Indus., Inc.*,
    852 F.2d 936 (7th Cir. 1988) ........................................................................................10

*State of Texas v. Epic Sys. Corp.*,
    No. 236-372872 (Tex. Dist. Ct., Tarrant Cnty. Dec. 10, 2025)................................20

*Su v. Su*,
    2022 WL 22877455 (N.D. Ill. Apr. 11, 2022) ............................................................20

*In re Sulfuric Acid Antitrust Litig.*,
    231 F.R.D. 331 (N.D. Ill. 2005)....................................................................................15

*Sullivan v. Sony Music Ent.*,
    2014 WL 13111889 (N.D. Ill. July 15, 2014) ..............................................................21

*Syrstad v. NECA-IBEW Welfare Tr. Fund*,
    2022 WL 22876269 (E.D. Wis. Aug. 31, 2022) ..........................................................22

*Vital Proteins, LLC v. Ancient Brands, LLC*,
    2023 WL 5671857, at *1 (N.D. Ill. Sept. 1, 2015) ......................................................15

*Whitford v. Gill*,
    2019 WL 294800 (W.D. Wis. Jan. 23, 2019) ..............................................................11

## Other Authorities

Fed. R. Civ. P. 12 ..................................................................................................................8

Fed. R. Civ. P. 12(b)(6)....................................................................................................15, 21

Fed. R. Civ. P. 26 ..........................................................................................................10, 19

Fed. R. Civ. P. 26(f)..................................................................................................6, 9, 10

## INTRODUCTION

The Court should deny Defendant Epic System Corporation's motion to stay discovery (Dkt. 83) pending the resolution of its motion to dismiss Plaintiff CureIS Healthcare, Inc.'s First Amended Complaint (Dkt. 80).  Epic concedes that such stays demand an exceptional showing, but fails to establish why the Court should deviate from the default rule permitting discovery to proceed in this case.  Epic identifies no concrete, nonspeculative discovery that a stay would narrow or avoid and elides the immense, existential prejudice CureIS faces from having its case (already put on hold for months due to transfer proceedings in the Northern District of California) further delayed while Epic chips away daily at CureIS's business and customer base through ongoing illegal activity.

This case concerns Epic's use of its dominance in critical markets for electronic health records (EHR) and claims processing (CAPS) software to prevent managed care healthcare organizations (MCOs) and provider-sponsored health plans (PSHPs) from accessing their own data and using CureIS's "middleware" products.  These products facilitate the seamless flow of data between complex provider-side and payer-side software and reduce the costs of switching between EHR and CAPS vendors like Epic, and  help MCOs and PSHPs efficiently manage patient enrollment, billing, and compliance.  CureIS's First Amended Complaint (Dkt. 40) explains how Epic is illegally destroying CureIS's business in an effort to keep MCOs and PSHPs artificially dependent on Epic's software ecosystem—including through anticompetitive and tortious tactics like blocking CureIS's customers from providing their data to CureIS, falsely disparaging CureIS's products, misrepresenting Epic's own capabilities, and forcing an "Epic-First Policy" that prohibits Epic's EHR or CAPS customers from using superior third-party solutions (like CureIS's products) in complementary product markets to EHR and/or CAPS software.

CureIS has tried to move discovery forward and hold Epic accountable before it can do further damage to CureIS, its customers, and to competition in various healthcare-related software markets. Epic, on the other hand, has sought delay. Before the court in the Northern District of California transferred this Action to this Court in early December 2025, the parties conducted a Rule 26(f) conference and CureIS served its First Set of Requests for Production. Although Epic claimed that the Action should be stayed pending its intended motion to dismiss, it never moved to stay discovery in the Northern District of California, and (as Epic acknowledges) CureIS never consented to such a stay even when the court in the Northern District of California vacated the briefing schedule on Epic's intended motion to dismiss pending resolution of Epic's motion to transfer. Instead, CureIS agreed that Epic could respond to the RFPs once the transfer motion was resolved. But when Epic finally responded to the RFPs upon transfer to this Court, it stated (among other boilerplate objections) that the requests are "premature" and declined to respond to 36 out of 48 RFPs until the undetermined, "appropriate time." Epic filed this Motion one week later.

Epic repeatedly acknowledges that this Court—its chosen forum—"does not stay discovery when a defendant files a motion to dismiss …." Dkt. 85 at 10 (citing Standing Order for Preliminary Pretrial Conference with U.S. Magistrate Judge Anita Marie Boor at 2). But Epic does **not** show why this case presents the exceptional circumstances that would justify departing from that rule. Instead, the Motion relies on a truism that courts in this Circuit routinely reject as insufficient: that its motion to dismiss, **if** granted, **could** simplify the issues. Epic also fails to identify any specific undue discovery burden that will be avoided with a stay. It merely observes that discovery is sometimes stayed in antitrust cases (but there is no *per se* rule) and describes the imagined burden posed by hypothetical discovery (that no party has actually served) involving

experts and third parties. These speculations prove that Epic can identify no actual excessive burden in the present.

Epic's analogy to *Particle Health Inc. v. Epic Systems Corporation* further undermines its request and demonstrates why this Court should hold to its typical approach not to stay a proceeding pending a garden-variety motion to dismiss like the one Epic filed here. The stay entered in *Particle*, based on the same arguments Epic presents here, proved wasteful because that court ultimately **denied** Epic's motion to dismiss Particle's core antitrust claims, and discovery on those claims had to begin from scratch months after it could have—and under this Court's general procedure, **would** have—proceeded.[1] The *Particle* case also shows Epic's widespread and consistently anticompetitive approach to everyday business, further underscoring why discovery here should proceed pending Epic's motion to dismiss.

Critically, Epic minimizes and badly mischaracterizes the factor weighing most heavily against a stay: the significant prejudice that CureIS, MCOs, PSHPs, and the public suffer each day that CureIS cannot pursue discovery on its claims. Epic's warning of "substantial" discovery disputes to come (Dkt 85 at 15) exposes its own deliberate strategy to obstruct discovery across multiple cases highlighting its endemic anticompetitive practices. In the meantime, Epic's CureIS-focused conduct continues unabated, undermining CureIS's ability to provide innovative software solutions to MCOs and PSHPs. The Court should not sanction this delay tactic and should permit the Action to proceed.

---

[1] Particularly notable is that the three out of four Particle antitrust claims that survived dismissal are the superset of all claims asserted in the case. Discovery on those claims thus implicates every factual issue implicated by Particle's other claims, including those that were dismissed. The same holds true here.

## RELEVANT FACTUAL BACKGROUND

On May 12, 2025, CureIS filed this Action against Epic in the Northern District of California, and, on July 14, 2025, amended its complaint to seek relief from Epic's direct interference with CureIS's Managed Care Middleware (MCM) business, libelous statements about CureIS's MCMs, and anticompetitive conduct to block CureIS's innovations. Dkt. 85 at 6-8; *see generally* Dkt. 40, 61. These claims, detailed in 192 paragraphs of allegations, stem from Epic's scheme to keep healthcare organizations like MCOs and PSHPs locked into Epic's products by preventing them from accessing their own data and using third-party solutions like the ones CureIS provides to facilitate the smooth transfer of data between payer- and provider-focused software. Before Epic identified CureIS as a "direct competitor" and set out to destroy it, CureIS had established itself as an innovative player in the healthcare information technology sector, enjoying strong relationships with its MCO and PSHP customers while providing a suite of software solutions to streamline, automate, and optimize components of the healthcare data management pipeline, including health plan enrollment, claims adjudication, revenue cycle management, and compliance. *See* Dkt. 40, 61 ¶¶ 1, 52-96. On June 17, 2025, Epic filed a Motion to Transfer Venue to the Western District of Wisconsin, Dkt. 22, a district where, as Epic acknowledges, "stays pending a motion to dismiss decisions are not often granted," Dkt. 85 at 10.

While its transfer motion was pending, Epic stated that it intended to file a motion to dismiss all of CureIS's claims, *see* Dkt. 86, ¶ 8, and the court in the Northern District of California entered the parties' stipulated briefing schedule on July 7, 2025, Dkt. 33. That briefing schedule gave Epic four months (as opposed to the 21 days provided by Rule 12) to file its motion to dismiss,

but did not stay discovery in the interim.[2]  Epic then enjoyed an even longer extension when, on September 5, 2025, the court in the Northern District of California stayed briefing "in light of the pendency of Epic's pending motion to transfer …, find[ing] it preferable to resolve that matter in advance of hearing any challenge to the FAC."  Dkt. 67.  About three more months passed before that court granted Epic's motion to transfer on November 26, 2025.  Dkt. 70.  After the Action was transferred to this Court on December 3, 2025 (Dkt. 72), and more than seven months after CureIS initiated this Action, Epic finally filed its motion to dismiss (Dkt. 81) on December 19, 2025.

In the meantime, CureIS diligently pursued discovery against Epic, as permitted by the Federal Rules of Civil Procedure.  While awaiting a decision on the motion to transfer, CureIS and Epic held a Rule 26(f) conference on August 8, 2025.  Dkt. 85 at 8.  CureIS served its RFPs later that month.  *See* Dkt. 86-4 (CureIS's August 25, 2025 RFPs).

Although Epic stated that the case should be stayed pending its intended motion to dismiss, it never filed a motion to stay in the Northern District of California, and CureIS never agreed to stay discovery.  *See* Dkt. 85 at 8; Ex. 1 at 1 (counsel correspondence).[3]  When it became clear that the court would likely transfer the case to this District, CureIS agreed to a limited extension for Epic to respond to CureIS's RFPs "[a]s a professional courtesy and to avoid burdening the court."  Ex. 1 at 1(counsel correspondence).  Pursuant to that agreement, Epic promised to serve its responses and objections to the RFPs "within seven days of the case being assigned to a new court if the Motion to Transfer Venue is granted."  *Id.*

---

[2]  As CureIS explained in the stipulation, the reason it agreed to the extended deadline for the motion to dismiss was to facilitate the Northern District of California's ability to first address Epic's pending motion to transfer.  *Id.*

[3]  All exhibits cited herein are attached to the accompanying declaration of Adam B. Wolfson.

But the responses Epic provided on December 10, 2025 (107 days after CureIS served its RFPs) were rife with overgeneralized, boilerplate, and improper objections—including an improper objection to nearly all requests that the discovery served after the parties' Rule 26(f) conference was "premature." *See* Ex. 2 (Epic's December 10, 2025 RFP Responses). Epic also refused to substantively respond to 36 out of 48 requests until "the appropriate time," *id.*, despite that the Federal Rules require a substantive response now. *See* Fed. R. Civ. P. 26(d) (document requests may be served 21 days after the summons and complaint are served on a party, and any served before or after "the first Rule 26(f) conference" are "considered to have been served"). A week later, on December 19, 2025, Epic filed this Motion, seeking a stay of discovery until the resolution of its motion to dismiss.

## ARGUMENT

Epic concedes that "stays pending motions to dismiss are the exception and not the rule in this Court," Mot. at 1, and "stays pending a motion to dismiss decision are not often granted in this District," *id.* at 6. Indeed, this Court "does not stay discovery when a defendant files a motion to dismiss," and permits parties who, like here, have conducted a Rule 26(f) conference (*see* Mot. at 4), to "seek discovery." Standing Order for Preliminary Pretrial Conference with U.S. Magistrate Judge Anita Marie Boor at 2. Yet, Epic refused to respond to CureIS's RFPs until the "Appropriate Time," which it defines as a time "following the Court's resolution of either Epic's forthcoming motion to stay discovery or dispositive motion to dismiss." Ex. 2 at 2. But Epic cannot grant itself a discovery stay. *See SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 945 (7th Cir. 1988) ("we agree that 'there is no requirement that the discovery cease during the pendency of a motion to dismiss unless the court has ordered a stay, which it has not done in this case'" (citations omitted)). In this Court, Epic's chosen forum, CureIS properly sought discovery from Epic, and Epic should respond now.

As the "party seeking a stay," Epic "bears the burden of proving that the court should exercise its discretion in staying the case," *Robinson v. Walgreen Co.*, 2021 WL 2453069, at *1 (N.D. Ill. June 16, 2021), for each of the following stay factors: (1) "whether the litigation is at an early stage," (2) "whether a stay will unduly prejudice or tactically disadvantage the non-moving party," (3) "whether a stay will simplify the issues in question and streamline the trial," and (4) "whether a stay will reduce the burden of litigation on the parties and on the court." *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010); *see also Nken v. Holder*, 556 U.S. 418, 433-34 (2009) ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."); *Hy Cite Corp. v. Regal Ware, Inc.*, 2010 WL 2079866, at *1 (W.D. Wis. May 19, 2010) ("The party seeking the stay carries the burden of establishing its necessity."). Further, "if there is even a fair possibility that the stay … will work damage to someone else," Epic "must make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Grice Eng'g*, 691 F. Supp. 2d at 920 ("the general test for imposing a stay requires the court to 'balance interests favoring a stay against interests frustrated by the action' in light of the court's strict duty to exercise jurisdiction in a timely manner").

Epic has not met its burden on any of the stay factors.

A.    **The Significant Prejudice to CureIS Weighs Strongly Against a Stay**

To determine whether to stay discovery, this Court is "must weigh the costs and benefits to each side." *Whitford v. Gill*, 2019 WL 294800, at *1-2 (W.D. Wis. Jan. 23, 2019) (declining to stay discovery pending Supreme Court's review because the delay "increas[es] the risk of prejudice to plaintiffs"). Epic does not dispute that "the parties have not yet engaged in discovery" in this Action, even though CureIS filed the complaint nearly eight months ago. Dkt. 54 at 7, 21.

Yet, Epic's cursory discussion incorrectly maintains that "there is no prejudice to CureIS from a brief stay." *Id.* at 6.

The requested stay is not "brief." *Id.* at 2. Epic repeatedly states that its motion to dismiss "will be fully briefed in less than two months" (which would already bring the case close to the one-year mark without progress in discovery), but it admits that the stay it seeks extends to when "the motion to dismiss is ***decided***." *Id.* at 21 (emphasis added). Although this Court resolves pending motions expeditiously, the added time the Court needs to resolve Epic's 46-page motion to dismiss—which Epic acknowledges "advances multiple distinct and independent arguments" (Dkt. 85 at 17)—means no meaningful discovery is likely to commence until over a year after CureIS filed this Action.

By that time, the Action would not be in its "infancy," as Epic claims. Dkt. 85 at 20; *see Hy Cite Corp.*, 2010 WL 2079866, at *2 (finding stay is not justified pending an appellate proceeding where "plaintiff would be forced to wait somewhere around nine months from filing simply to begin *this* case, a wait as long as some cases take to be tried in [the Western District of Wisconsin]"); *see also Robinson*, 2021 WL 2453069, at *2 ("Now, the case has been pending without any progress for nearly a year, so the Court disagrees with Defendant's assertion that the case is still in its 'early stages.'"); *CMG Worldwide Inc. v. Adidas Am., Inc.*, 2018 WL 7140117, at *3 (S.D. Ind. Sept. 26, 2018) (concluding that where discovery has not commenced for a case "filed well over a year ago," a further stay prejudices the plaintiff).

In the meantime, CureIS has been substantially prejudiced and tactically disadvantaged by the prolonged inability to pursue its claims. Epic's conduct has ongoing, real-time effects on CureIS's business. *See* Dkt. 40, 61 ¶ 106 ("Due to Epic's conduct, CureIS's revenues have declined significantly."). Each added month of delay compounds the harm CureIS suffers as Epic

12

continues to interfere with CureIS's customer relationships and to block access to data that CureIS needs to serve its clients. *See Grice Eng'g*, 691 F. Supp. 2d at 922 (finding prejudice where plaintiff "would be deprived of the ability to obtain a judgment … while the stay is pending[, which] might allow defendants the opportunity to exploit and violate plaintiff's intellectual property rights."). CureIS has already been forced to wait nearly eight months to receive even Epic's deficient RFP responses through no fault of its own. Further delay would allow Epic to continue its harmful conduct unchecked while preventing CureIS from developing its case and obtaining the relief it needs. And notably, CureIS is not alone in its prejudice. Epic's anticompetitive conduct affects not only CureIS and customers that rely on CureIS's products, but also the public—which benefits from robust competition in the markets for MCM and related software and suffers from an absence of useful products, services, and fair prices. *See, e.g.*, Dkt. 40, 61 ¶ 10 ("[Epic] has injured the market and the public at large ….").

Moreover, Epic omits that it has ***already*** enjoyed what amounted to an extended discovery stay. As "a professional courtesy and to avoid burdening the court" that has made it clear that it was going to transfer this case to this District, CureIS agreed that Epic could serve its responses to CureIS's initial RFPs shortly after resolution of Epic's motion to transfer. Ex. 1 at 1 (counsel correspondence). Because that transfer motion was pending for five months before resolution, Epic admits that "CureIS's first set of document requests ... were effectively placed on hold as soon as they were served pending resolution of Epic's motion to transfer." Dkt. 85 at 20-21. Epic now seeks an additional stay of discovery, compounding the prejudice on CureIS. Where, as here, the plaintiff had already "agreed to the stay 'for the sake of convenience' despite disagreeing with the merits of Defendant's request," "a second stay … would be prejudicial" to CureIS's "ability to develop its case." *Robinson*, 2021 WL 2453069, at *2; *see CMG Worldwide*, 2018 WL 7140117,

at *3 (concluding that where "in effect, [the defendant] has already had the benefit of a lengthy stay, … a stay that extends even further could prejudice the plaintiff's ability to develop its case, because the passage of time tends to erode proof of claims and damages").



## B.    Epic Fails to Establish That a Stay Will Reduce the Burden of Litigation

While providing only cursory attention to the prejudice on CureIS, Epic's Motion focuses primarily on alleged burdens that a stay may alleviate.  None of Epic's myriad arguments meets its burden to show that a stay will reduce the burden of litigation:

***First***, Epic wrongly suggests that because CureIS asserts antitrust claims, Epic can establish "acute burdens imposed by discovery" that justify a stay.  Dkt. 85 at 5.  As an initial matter, there is no *per se* rule requiring a stay of discovery simply because antitrust claims are present—and indeed such stays are routinely denied.  *See, e.g.*, *Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, 2014 WL 1797674, at *1-2 (C.D. Ill. May 6, 2014) (denying a stay of discovery regarding violations of Sherman Act sections 1 and 2, the Illinois Antitrust Act, the Illinois Consumer Fraud Act, and tortious interference with prospective economic advantage); *Forest River, Inc. v. Heartland Recreational Vehicles, LLC*, 2012 WL 4049268, at *3 (N.D. Ind. Sept. 12, 2012) (denying a stay of discovery for claims of predatory pricing, antitrust law violations under federal and state law, and allegations of unfair competition).  As in every other case, Epic

must meet its burden to show that this is an exceptional case requiring a stay based on the specific circumstances presented.  *See Nken*, 556 U.S. at 433-34.  It has not.

None of the cases Epic cites (Dkt. 85 at 11) supports a stay here.  On the contrary, each confirms that "[t]he mere filing of the motion does not automatically stay discovery," even in antitrust cases.  *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005); *see DSM Desotech Inc. v. 3D Sys. Corp.*, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008) (same).  Instead, they confirm that stays based on a motion to dismiss are cabined to exceptional circumstances, like where the motion can resolve "a threshold [issue], such as jurisdiction, standing, or qualified immunity."  231 F.R.D. at 336-37 (internal citations omitted).  Epic does not invoke those issues here or in its pending motion to dismiss.[4]  Epic's own authority holds that for the kind of Rule 12(b)(6) motion Epic filed here, even the potential "hefty costs associated with antitrust discovery" are not "tantamount to an automatic prohibition on discovery in every antitrust case."  *DSM Desotech*, 2008 WL 4812440, at *3.[5]

Further, Epic does not explain what additional discovery burden the antitrust claims impose beyond what the non-antitrust claims already require.  Although CureIS's antitrust and other statutory and tort claims are distinct, they share a common core of factual allegations concerning Epic's blocking of access to data, its disparagement of CureIS, and its implementation of the "Epic-first policy" that prohibits Epic customers from using third-party solutions like CureIS's products.

---

[4]  Epic asserts that a statute-of-limitations argument in its motion to dismiss supports a stay, but that argument, presented in a single paragraph, relates to a particular contract with one of CureIS's customers.  The resolution of time-bar issue would not meaningfully affect Epic's discovery burden.  *See* Dkt. No. 81 at 41.  Further, the statute-of-limitations argument is unlikely to prevail, including because it is based on Epic's disagreement with factual allegations in the FAC that must be accepted as true at the motion-to-dismiss stage.

[5]  In another case Epic cites, *Vital Proteins, LLC v. Ancient Brands, LLC*, the court permitted the ***plaintiff***'s claims to "proceed[] apace" during a limited stay of discovery on the defendant's counterclaims.  2023 WL 5671857, at *1 (N.D. Ill. Sept. 1, 2015).

**Second**, Epic's primary argument concerning burden merely reiterates Epic's boilerplate discovery objections,[6] proving that Epic's discovery concerns would be more efficiently resolved through the normal discovery process—such as meet-and-confer conferences between the parties or, if necessary, through discovery motions—rather than a stay that would preclude any informal resolution and cause further delay and prejudice to CureIS.

Further, Epic mischaracterizes CureIS's RFPs as overbroad. Dkt. 85 at 5; *see also id.* at 13-14. For example, several of the requests (Requests 19-22) seek basic information about Epic's Tapestry product suite—*e.g.*, which products are sold through the suite—that Epic recently removed from public view by placing it behind a login wall on its website. *See, e.g.*, *Health Plans*, EPIC, https://www.epic.com/software/health-plans/ (last visited January 5, 2026) (Epic's Health Plan product page stating that resources providing "a high-level view of what Epic can do now, which new features are coming soon, and what the future holds" "require a UserWeb login"). Epic cannot seriously contend that producing information it makes available on its website is overly burdensome. CureIS's other targeted requests seek information regarding Epic's anticompetitive and tortious conduct that underpins CureIS's nine interrelated claims: the technological and policy barriers to data sharing imposed on third-party vendors like CureIS (Requests 18, 25-26, 29-32, 36-37, 42-45); market size, penetration, and competitive information typically sought in antitrust cases regarding Epic's Tapestry[7] (Requests 5, 7-8, 12-13, 16) and EHR (Requests 6, 9-11, 14-15,

---

[6]   For example, Epic repeatedly objects that CureIS "will comprehensively seek sensitive and confidential commercial information," *e.g.*, ECF 85 at 13, but that is not a consideration in deciding whether a stay of discovery is appropriate here.

[7]   Epic takes issue with CureIS's requests regarding "Epic's Ancillary Payer Products" (Mot. at 9), yet Epic concedes that Tapestry is a "software suite [that] enables health plan customers to manage core payment-related administrative and operations tasks." Mot. at 1 (emphasis added). CureIS's limited requests for documents regarding Epic's Ancillary Payer Products (Requests 16, 19, 20, 26, 33-35) seek information regarding the extent to which Epic requires customers to exclusively use products in or related to its Tapestry software suite.

17) products; and information regarding Epic's interference with CureIS's business specifically (Requests 23-24, 27, 39-40, 46-48). .

**Third,** although Epic complains about the purportedly expansive scope of CureIS's discovery requests, it offers no specific discussions about undue discovery burdens that could justify a stay. Epic has not, for example, "provide[d] any estimate of the cost associated with responding to the discovery" or "an affidavit or other support for [its] allegation of undue burden." *Harper v. Central Wire, Inc.*, 2020 WL 5230746, at *4 (N.D. Ill. Sept. 2, 2020) (denying motion to stay discovery). But "[c]ourts in this circuit find that broadly decrying the time and expense that is expected to be associated with responding to discovery, without any substantiation, does not establish good cause for staying discovery." *Id.*; *see also U.S. ex rel. Robinson v. Indiana Univ. Health Inc.*, 2015 WL 3961221, at *5 (S.D. Ind. June 30, 2015); *Castrillon v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 2011 WL 4538089, at *2 (S.D. Ind. Sept. 29, 2011).

Epic's cited authority does not excuse Epic's failure to establish any particular burden discovery would impose. Dkt. 85 at 14. In each case Epic relies on, the movant—unlike Epic—made a specific showing on burden based on the particular circumstances, and even then, the court granted only a partial stay of discovery. In *Omnireps, LLC v. CDW Corp.*, 2024 WL 2052069, at *3 (N.D. Ill. May 8, 2024), for example, the court granted a partial discovery stay based on the specific showing that discovery would need to be coordinated across 14 individual and corporate defendants in multiple jurisdictions. That is a far cry from the targeted discovery currently sought (from a single defendant in its chosen jurisdiction) here.

Unable to identify undue burden Epic faces in complying with the RFPs it already promised to respond to, Epic resorts to describing hypothetical burdens it "anticipates" Epic and third parties **might** face, based a litany of discovery no party has served in this case. Dkt 85 at 14. Notably,

Epic does not explain why even such discovery would be disproportionate to the needs of the case, nor why simply issuing requests of that nature would create undue burdens while the Court addresses Epic's motion to dismiss.  It is also unlikely that depositions and testimony of "multiple expert witnesses" would occur during the pendency of Epic's motion to dismiss.  *See* Dkt. 85 at 15-16.  This imagined discovery thus has no bearing on this Court's decision to stay discovery during the pendency of Epic's motion to dismiss.

 **Fourth,** although Epic urges this Court to follow the approach taken by the court in *Particle* and "grant[] Epic's similar request for a discovery stay," that case only demonstrates why this Court should not stay discovery here.  Epic incorrectly states that the stay in *Particle* "significantly narrowed discovery after dismissing the majority of claims."  Dkt. 85 at 16.  Particle defeated Epic's motion to dismiss on each of its core antitrust claims. *See Particle Health Inc. v. Epic Sys. Corp.*, 2025 WL 2581579, at *23 (S.D.N.Y. Sept. 5, 2025) (denying Epic's motion to dismiss Particle's three claims under Section 2 of the Sherman Act and granting Epic's motion to dismiss only Particle's ancillary Section 1 claim for failure to allege agreements between Epic and third parties).  Thus, in what Epic concedes is "an analogous case" involving a "similar ... set of claims, including antitrust claims, against Epic," Dkt. 85 at 6, the stay that the court in the Southern District of New York granted Epic—based on the same arguments from the same counsel—resulted in an entirely wasteful delay that is contrary to this Court's standard practices.

 Indeed, Epic's motion to dismiss in *Particle* did not narrow the scope of that case at all with respect to the antitrust claims, because the court concluded that Particle sufficiently pled Section 2 monopolization and attempted monopolization claims where Particle alleged (like CureIS) that Epic maintained monopoly power by, *inter alia*, "cutting off Particle customers' access to Epic-stored EHRs unless they agreed not to do business with Particle," "prolonging the

approval process for new Particle customers to access Epic-stored EHRs," and "launching a 'market-wide disparagement campaign' against Particle"; *i.e.*, conduct highly similar to what Epic did (and continues to do) to CureIS. 2025 WL 2581579, at *16-17.

*Particle* therefore further confirms that Epic seeks a stay not to address any exceptional discovery burden, but to advance its systematic efforts to delay and obstruct discovery wherever and whenever it can. The anomalous decision by the court in *Particle* to subsequently conduct phased antitrust discovery—which prevents Particle from pursuing full discovery on its viable antitrust claims—has generated additional disputes over what falls within the scope of the court's order to first conduct "focused discovery" on market definition. *Id.* at *11; *see* Exs. 3-5 (*Particle* Dkt. 45, 50, 55, 57 discovery letters). In connection with those disputes, Epic has taken extreme positions, arguing that it "need not (1) file an answer, (2) provide Rule 26(a)(1) initial disclosures, (3) perform any custodial document collections, (4) engage in fulsome discovery on market definition, (5) participate in narrow depositions or expert discovery on market definition, []or (6) even begin to negotiate a discovery schedule for the remainder of Particle's claims." Ex. 3 at 1 (*Particle* Dkt. No. 45 discovery letter). *Particle* therefore shows the inefficiencies a court can create—and the mischief it incentivizes a defendant to pursue—by not allowing discovery to proceed in the fashion contemplated by the Federal Rules.

To this point, Epic has already previewed its intent to take similar stonewalling approach here. Despite promising to respond to CureIS's properly served RFPs, Epic did not substantively respond to most of them, claiming that they are premature. Ex. 2. And even though the parties have not held a single discovery meet and confer, Epic's Motion promises "substantial" discovery "disputes" over those RFPs, for which Epic will involve this Court. Dkt. 85 at 15. In view of

19

Epic's own conduct and representations, a stay of discovery would exacerbate the prejudice to CureIS and extend the delay CureIS has already experienced in pursuing its claims.

Epic also makes clear that it aims to delay the adjudication of its extensive anticompetitive and tortious conduct across the healthcare industry:  it states that "a stay of discovery while the motion to dismiss remains pending will ensure that … numerous third parties need not bear the burden of responding to discovery."  Dkt. 85 at 14-15.  But the third parties Epic references are the ones it has harmed through its conduct by preventing them from using CureIS's products, despite their desire to do so.  Those third parties are also not yet subject to any discovery and have not complained about any discovery burden.[8]  And there is every indication that third parties in fact want to be free from Epic's anticompetitive constraints.[9]  The impact of the alleged conduct on the healthcare industry and the public therefore weighs strongly *against* a stay.

## C.    Epic Fails to Establish That a Stay Will Simplify the Issues

Finally, Epic does not establish that a stay will simplify the issues in this Action.

***First***, Epic cannot meet its burden to justify delaying discovery by offering the obvious fact that a motion to dismiss could simplify the issues in the case if this Court grants that motion.  Dkt. 85 at 5, 18.  That is always true, and does not offer the sort of exceptional circumstances that

---

[8]  The case Epic cites, *Su v. Su*, does not support a stay under these circumstances.  In *Su*, there were multiple pending discovery disputes, including motions to compel and motions to quash third-party subpoenas, and the court concluded that the plaintiff was not prejudiced where she "failed to review" documents the defendants already produced.  2022 WL 22877455, at *1-2 (N.D. Ill. Apr. 11, 2022).

[9]  For example, the Texas Attorney General recently filed a lawsuit against Epic asserting similar claims of monopolization and anticompetitive conduct under the Texas Free Enterprise and Antitrust Act.  Complaint (Dkt. No. 1) at 1, *State of Texas v. Epic Sys. Corp.*, No. 236-372872 (Tex. Dist. Ct., Tarrant Cnty. Dec. 10, 2025).  The Texas Attorney General alleged that Epic maintains a monopoly in EHR database software and "Epic-EHR Applications" markets, *id.* at 54-57, and does so by "hold[ing] its customers' data hostage ... if they work with any company that Epic deems a competitor" and "coerc[ing] customers into not switching to *any* overlapping competitor applications by imposing massive penalty fees."  *Id.* at 2.

can justify a discovery stay. *See Cohn v. Taco Bell Corp.*, 147 F.R.D. 154, 162 (N.D. Ill. 1993) ("we simply do not find any justification in delaying discovery because of defendant's motion to dismiss since, among other things, the likelihood of the motion's total success is somewhat speculative"); *see also Robinson*, 2021 WL 2453069, at *2-3 (finding that the argument "that the Court should stay discovery because the motion to dismiss is potentially dispositive of the entire case" "failed to show how a stay would simplify the issues in the case"). And Epic's self-serving belief that it has "identif[ied] fatal flaws in multiple aspects of each of CureIS's claims" in its motion to dismiss, Dkt. 85 at 17, "but until the District Judge rules on the motion, [Epic's] assertion is mere speculation" and amounts to a request to this Court to "make a preliminary finding on the likelihood of success on the merits" that "circumvents the usual procedures for ruling on the motion." *New England Carpenters Health & Welfare Fund*, 2013 WL 690613 at *2.

Every case Epic relies on (Dkt. 85 at 17) involves exceptional circumstances—not present here—where a pending motion "raises a potentially dispositive threshold issue such as a challenge to a plaintiff's standing, or pending resolution of qualified immunity claims." *Id.* at *1; *see Sullivan v. Sony Music Ent.*, 2014 WL 13111889, at *1 (N.D. Ill. July 15, 2014) (similar). Epic's motion to dismiss, by contrast, is a garden-variety Rule 12(b)(6) motion that does not involve threshold legal issues of that type, as each of Epic's cited cases did. *Contra Lord v. PDD Holdings, Inc.*, 2024 WL 5432081, at *3 (N.D. Ill. Feb. 28, 2024) (challenging personal jurisdiction); *Crowley v. Crowley*, 2025 WL 2605945, at *2 (S.D. Ind. Aug. 6, 2025) (challenging subject matter jurisdiction); *Liggins v. Reicks*, 2021 WL 2853359, at *3 (N.D. Ill. July 8, 2021) (invoking a qualified immunity defense); *Nexstar Broad., Inc. v. Granite Broad. Corp.*, 2011 WL 4345432, at *3 (N.D. Ind. Sept. 15, 2011) (challenging plaintiff's standing). And given CureIS's detailed 192-paragraph pleading containing specific allegations concerning Epic's pervasive illegal conduct,

the FAC is neither plainly deficient nor procedurally defective.  There is simply no basis to infer the high likelihood that the motion to dismiss will simplify the issues that would be necessary to enter the requested stay.  *Cf.* Mot. at 13 (citing *Syrstad v. NECA-IBEW Welfare Tr. Fund*, 2022 WL 22876269, at \*3 (E.D. Wis. Aug. 31, 2022)).

  ***Second***, Epic's reliance on the motion to dismiss decision in *Particle* is, again, misplaced. Mot. at 2.  As noted above, the court in *Particle* declined to dismiss the core set of Particle's antitrust claims, which were themselves the superset of all other claims.  *See Particle Health*, 2025 WL 2581579, at \*23.  And the claims under New York law that the court dismissed are not applicable here.  *Id.  Particle* thus only makes it ***less*** likely that the resolution of Epic's motion to dismiss will result in a narrowing of the issues for discovery.

## CONCLUSION

  For the foregoing reasons, the Court should deny Epic's motion to stay discovery and allow discovery to proceed.

Dated:  January 5, 2026       Respectfully submitted,

                By: */s/ Stephen P. Hurley*
                _____

Stephen P. Hurley
Andrew W. Erlandson
Catherine E. White
**Hurley Burish, S.C.**
33 East Main Street, Suite 400
Madison, WI 53703
Tel: 608.257.0945
Fax: 608.257.5764

Adam B. Wolfson (*admission pending*)
Ryan S. Landes (*admission forthcoming*)
**Quinn Emanuel Urquhart & Sullivan, LLP**
865 S Figueroa Street
Los Angeles, CA 90017
Tel: 213.443.3000
Fax: 213.443.3100

Paulina Slagter (*admission forthcoming*)
**Quinn Emanuel Urquhart & Sullivan, LLP**
555 Twin Dolphin Drive
Redwood Shores, CA 94065
Tel: 650.801.5000
Fax: 650.801.5100

Joseph H. Margolies
**Quinn Emanuel Urquhart & Sullivan, LLP**
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312.705.7400
Fax: 312.705.7401

*Attorneys for Plaintiff CureIS Healthcare, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 5, 2025, a true and correct copy of the foregoing with redactions to under seal information was served upon all counsel of record via CM/ECF system. Further, a true, correct, and under seal copy of the foregoing was also served upon counsel of record via email.

DATED:  January 5, 2026

By  */s/ Kehinde Fadele*
Kehinde Fadele