**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

CURIES HEALTHCARE, INC.,

*Plaintiff*,

v.

EPIC SYSTEMS CORPORATION

*Defendant*.

Case No. 3:25-cv-00991 (JDP)

**PLAINTIFF'S MOTION TO REDUCE "ATTORNEYS' EYES ONLY" DESIGNATIONS FOR EPIC PRODUCT MANUALS AND HANDBOOKS TO "CONFIDENTIAL"**

**PLEASE TAKE NOTICE** that, pursuant to paragraph 5 of the parties' Joint Stipulated Motion for Protective Order ("Protective Order") (Dkt. No. 116), Plaintiff CureIS Healthcare, Inc. ("Plaintiff" or "CureIS"), by and through its undersigned counsel, hereby requests that Defendant Epic Systems Corporation ("Defendant" or "Epic") be ordered to change the confidentiality designations of thirty-three documents from "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to "CONFIDENTIAL."

## <u>BACKGROUND</u>

Epic served CureIS with its first production of documents on March 30, 2026. Slagter Decl. ¶ 4. The production included forty documents, consisting primarily of years-old user manuals for Epic's products, and all of which were designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" ("HC-AEO"). *Id.* On March 31, 2026, CureIS challenged the confidentiality designation of thirty-five of these documents. Slagter Decl. ¶ 5; Ex. A at 4-5. Ten business days after receiving the initial challenge from CureIS, the maximum amount of time permitted under the Protective Order ¶ 5, Epic responded, (1) agreeing to redesignate two documents to "CONFIDENTIAL," and (2) asserting it was maintaining the HC-AEO designations for the remaining thirty-three documents. Slagter Decl. ¶ 6; Ex. A at 3-4. CureIS again, on April 18, 2026, reiterated its position that "the 'HC-AEO' designation remains unsupported" because the thirty-three documents "appear to be guides, manuals, and handbooks shared with as many as *thousands* of third parties" (Slagter Decl. ¶ 7; Ex. A at 2-3), and on April 21, 2026, Epic, again, declined to down designate. Slagter Decl. ¶ 8; Ex. A at 1.

CureIS now moves to redesignate these Epic documents because Epic's HC-AEO designations improperly prevent CureIS personnel subject to the Protective Order from reviewing

these case-critical materials. The Protective Order allows HC-AEO protection only for material that contains:

> (a) trade secrets or other highly competitive or commercially sensitive proprietary and non-public information that, if disclosed, would likely result in competitive or commercial harm to the Producing Party; (b) material that a Producing Party reasonably determines in good faith would not otherwise be adequately protected under the procedures set forth herein for Confidential Information; (c) Protected Health Information (as defined below); or (d) sensitive personally identifiable information (*e.g.*, social security numbers).

Dkt. No. 116 at 3. The user guides, self-help manuals, and generic product overviews that Epic distributes to thousands of third parties in the ordinary course of business do not meet this stringent definition, and there is no good reason for Epic to therefore prevent a similar third party, CureIS, from reviewing these materials under the strictures of the Protective Order in order to aid its outside counsel in the litigation of this case.

## **LEGAL STANDARD**

Courts have repeatedly held that "there is a 'presumption of public access to discovery materials'" and that "the tradition that litigation is open to the public is of very long standing." *Global Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd.*, 133 F. Supp. 3d 1079, 1083-84 (citing *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943,946 (7th Cir. 1999) and *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000)). Accordingly, when considering whether the heightened "Attorneys' Eyes Only" ("AEO") designation should apply, courts have held that AEO should "only be used on a relatively small and select number of

3

documents where a genuine threat of competitive or other injury dictates such extreme measures."

*Id.* at 1084 (quoting *Team Play, Inc. v. Boyer*, 2005 WL 256476 (N.D. Ill. Jan. 31, 2005)).

**ARGUMENT**

**I.    EPIC FAILS TO MEET ITS BURDEN FOR THE HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY DESIGNATION**

Under the stipulated Protective Order governing this case, the AEO designation applies for, *inter alia*, "trade secrets or other highly competitive or commercially sensitive proprietary and non-public information." Dkt. No. 116 at 3. The Protective Order presupposes that most "proprietary or confidential business information, non-public personal, client, or customer information" will be designated "CONFIDENTIAL." Dkt. No. 116 at 2. It follows that only the "***extremely*** confidential materials from within the trade secrets or other confidential research, development, or commercial information" can properly be designated as AEO. *See THK Am., Inc.*, 157 F.R.D. at 643, 645 (rejecting defendant's "simplistic blanket claim that all information the disclosure of which would be 'competitively damaging' is perforce 'extremely confidential'" and holding that the "wholesale use" of the AEO designation was "contrary to the very purpose of the parties' agreed upon two-tiered Protective Order"). The Protective Order further confirms that confidential information was always going to be disclosed to CureIS, and only *extremely* confidential materials from within trade secrets or other commercially sensitive information was to be designated HC-AEO. *See id.* at 643. CureIS has the burden of pursuing any relief desired, but Epic bears the burden of justifying the appropriateness of the designation. *See Penn, LLC v. Prosper Bus. Dev. Corp.*, 2012 WL 5948363, at *2 (S.D. Ohio Nov. 28, 2012).

Despite these mandates, Epic indiscriminately designated its entire initial production of forty documents as HC-AEO. The overwhelming majority of that production consisted of support guides that Epic has shared with thousands of customers and their employees— ████████

4

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ Epic's claim that all of this material must be AEO "stands the Protective Order on its head." *THK Am., Inc.*, 157 F.R.D. at 645.

Epic has not provided any legitimate justification for its AEO designation; it has merely parroted the Protective Order's definition and asserts in a conclusory matter that "the documents include detailed proprietary information that is trade secret, highly sensitive, and/or commercially sensitive." Ex. A at 1; *compare* Dkt. No. 116 at 3. Epic has not provided any specific explanations for the documents being challenged, and has never explained how redesignation of the documents to "CONFIDENTIAL" would lead to competitive harm—especially when the party reviewing them is subject to the Court's oversight under the Protective Order. Moreover, given the documents at issue, there cannot be any legitimate competitive harm concerns.

Courts throughout the Seventh Circuit have repeatedly held that "[c]onclusory statements are insufficient to show that a 'slight expansion of disclosure' puts the designating party at an appreciable risk." *Raffel Sys., LLC v. Bob's Disc. Furniture, LLC*, 2022 WL 561892, at *1 (E.D. Wis. Feb. 24, 2022) (internal citations omitted). As in *Guild Associates, Inc. v. Bio-Energy (Washington) LLC*, Epic's reasons for opposing redesignation "can only be characterized as conclusory" and "are of the sort summarily disregarded by Courts when considering the viability of an AEO designation." 2015 WL 1926422, at *3 (S.D. Ohio Apr. 28, 2015). Epic "provides no detailed examples of what specific information would lead to an unearned advantage or the potential extent of any such advantage." *See id.* Nor could it. As noted above, the documents

████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████; and courts routinely recognize that documents like this do not merit protection under AEO. *See, e.g.*, *NEXT Payment Solutions, Inc. v. CLEAResult Consulting, Inc.*, 163 F.4th 1091, 1097 (7th Cir. 2026) (holding that none of the software module descriptions are specific enough to "articulate a concrete secret that derives economic value from being generally unknown"). These documents merely tell users the end result of what Epic's software does and how to use that software; they do not explain *how* the software operates at, for example, the source code level. *See id.* at 1096.

Indeed, as an indication of both the generality of the documents Epic designated as HC-AEO and the public nature of the information contained within these documents, CureIS has identified much of the same information in one of Epic's AEO documents in a publicly-available overview of Epic's Tapestry product. Slagter Decl. ¶¶ 9-10; Ex. B. Exhibit B, which Epic designated as HC-AEO, is titled ████████████████████████████ and dated ███████ Ex. B at 1. This overview describes at a very high level of generality how ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ *Id.* At its most granular, this "overview" describes that—not how—██████████████████████████████ ██████████████████████████ and that ████████████████████████ ███████████████████████ *Id.* at 2. Further, while this overview does contain some mock[1]

---

[1] ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████

screenshots of Epic's dashboards, similar screenshots of Epic Tapestry dashboards are also contained in a publicly-available "Overview of Tapestry 002" document from 2021.



Ex. B at 9.



Ex. C at 1.

In meet and confer, Epic cited decisions from two out-of-circuit district courts that have upheld Epic's AEO designation of *other types of* documents—not the years-old user manuals at issue here—but these cases are inapposite.[2] Indeed, even if Epic were able to show that the specific information in each of the 33 documents constitutes trade secrets (it cannot), courts in this circuit have consistently held that "[t]he mere presence of 'trade secrets' does not automatically entitle the producing party to an AEO protective order." *Penn, LLC*, 2012 WL 5948363, at *4. "Even if the Court accepts as true the fact that certain documents contain 'trade secrets,' it remains [the producing party's] burden to show why the documents should be designated AEO." *Id*.; *see also THK Am., Inc.*, 157 F.R.D. at 641 ("[T]here is no absolute privilege against production of trade secrets and similar confidential business information."). Epic's say-so assertion that these user manuals contain (unidentified) "trade secrets" does not merit the more restrictive designation of HC-AEO without meaningful substantive justification from Epic. *See Penn, LLC*, 2012 WL 5948363, at *4 (holding that "[a]bsent some demonstration as to why designating the documents as 'Confidential' does not suffice to protect [the defendant's] interest in confidentiality, the Court sees no reason why the documents in question should be categorically shielded from Plaintiff's view."). That is especially true here, where Epic's claim of "trade secrets" in its user manuals is

---

[2] Epic's non-precedential cases involved documents wholly unlike the documents here. In *Strategic Partners, Inc. v. FIGS, Inc.*, the document at issue was an investment memo prepared for potential investors, and the court held that "both the detailed financial and customer data in the Investment Memorandum and the analysis of that data for potential investors in FIGS, are exactly the type of information that a company would not want to fall into the hands of a direct competitor's executives and/or employees." 2021 WL 1034156, at *8 (C.D. Cal. Feb. 25, 2021). In *Fortech S.R.L. V. Motor Consultants of America, Inc.*, the court allowed an AEO designation for **source code** that defendants allegedly took and sold improperly. 2024 WL 4580799, at *3 (E.D. Mich. May 9, 2024). Of course, Epic's widely-distributed user manuals do not contain sensitive financial analysis or source code. And in both *Strategic Partners* and *Fortech*, the courts were only considering an AEO designation as opposed to *public disclosure*, whereas here CureIS is proposing the still-protective designation of "Confidential."

tenuous at best given that Epic distributes these manuals to thousands of customers. *See NEXT Payment Solutions, Inc.*, 163 F.4th at 1096-98 (holding that "generic descriptions" of software features without "any specific algorithms, source code or methodologies underlying the [software's] functionality" and that are available to anybody using the software are not trade secrets). Epic has failed to carry its burden that the AEO designation is appropriate for these documents.

In response, Epic is likely to argue that it subjects third parties receiving these materials to confidentiality obligations with respect to them—they are not allowed to share the manuals, guides, and handbooks with other absent Epic's permission. That is all well and good for Epic's normal business practices, but it notably ignores a core point central to this motion: the confidentiality obligations Epic imposes are akin to the "CONFIDENTIAL" designation under the Protective Order here. Epic does not require attorneys' eyes only levels of access for the third parties receiving this in the normal course, so it is difficult to see how or why that higher level of confidentiality would be appropriate here, especially with no explanation of what is actually a supposed "trade secret."

## <u>CONCLUSION</u>

CureIS respectfully requests that the Court order Epic to redesignate the thirty-three documents in dispute as "CONFIDENTIAL," in accordance with the stipulated Protective Order.

DATED: April 28, 2026
QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____*/s/ Adam Wolfson*_____
Adam Wolfson
*Attorney for Plaintiff,*
*CureIS Healthcare, Inc.*

**CERTIFICATE OF SERVICE**

I, Adam Wolfson, certify that on April 28, 2026, a copy of the foregoing was served on all attorneys of record via email.


 */s/ Adam Wolfson*
Adam Wolfson