**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| CUREIS HEALTHCARE, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> EPIC SYSTEMS CORPORATION <br><br> *Defendant*. | Case No. 3:25-cv-00991 (JDP) |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO REDUCE "ATTORNEYS' EYES ONLY" DESIGNATIONS FOR EPIC PRODUCT MANUALS AND HANDBOOKS TO "CONFIDENTIAL"

CureIS Healthcare, Inc. ("CureIS") respectfully submits this reply in further support of its motion to reduce the "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY" ("AEO") designation on 27 of Epic's documents to "CONFIDENTIAL."

**INTRODUCTION**

Epic's opposition does not engage with the documents at issue. Instead, Epic devotes twenty-three pages to describing categories of information (future development roadmaps, proprietary source code, implementation methodologies) that do not appear in the "Setup Guides" and "User Handbooks" CureIS has moved to redesignate. Epic's opposition thus answers a different question than the one before the Court. The question before the Court is not whether Epic's software is proprietary in the abstract, or whether Epic has invested in its business over four decades, but whether these specific documents contain trade secret or highly sensitive commercial information warranting the most restrictive designation available under the Protective Order. Epic cannot meet that burden by pointing out it was founded in 1979. That argument applies to every single Epic document. Epic has not answered the actual question.

Epic's burden argument fares no better. Epic argues that CureIS, as the objecting party, bears the burden of proving the AEO designation is unwarranted, and then faults CureIS for failing to explain why Epic's own documents are or are not trade secrets. CureIS is not in a position to make that showing, nor is it required to. CureIS's burden is to identify the deficiencies in Epic's justification for the designation. It has done so: Epic's documents are designated "Confidential" in Epic's *own* systems; Epic distributes them to customers through standard secure portals subject to ordinary Terms of Use; and Epic points to no aspect of these specific documents that reveals

anything a competitor could use to replicate Epic's software or preempt its product releases.  That is sufficient.  Epic has not met its burden to establish different treatment in this case.

To this point, Epic's portal argument proves too much.  Enterprise software providers typically distribute user guides and setup manuals through secure portals, which almost always utilize password protection and login requirements (and often, two-step authentication).  Virtually every software license comes with Terms of Use restricting access to or use by non-licensees.  None of that transforms the instruction manuals and setup guides accessible through those portals into trade secrets.  Accepting Epic's logic would subject all setup guides and user handbooks to AEO protection in virtually every lawsuit, regardless of their actual content.  Here, that would render the Protective Order's two-tiered designation structure meaningless.  That cannot be correct and Epic offers no good reason to conclude otherwise.

The Court should grant CureIS's motion.

## ARGUMENT

## I.    EPIC BEARS THE BURDEN OF JUSTIFYING ITS AEO DESIGNATIONS

Epic's procedural argument that CureIS failed to meet its burden under the Protective Order conflates two distinct questions: who bears the obligation to *file* a challenge and who bears the ultimate burden of *justifying* a designation.  On the latter, Epic's justifications are insufficient to meet its burden.

### A.    The Protective Order Does Not Relieve Epic of Its Obligation to Substantiate Challenged Designations In Response To CureIS's Arguments

CureIS agrees that, as the objecting party, it does have the burden in the first instance to show why a document does not warrant AEO treatment.  Dkt. No. 116 (Protective Order) ¶ 5.  But that provision says nothing about Epic's obligation to provide a specific, non-conclusory ***response***

3

to those showings.  Courts in this Circuit have consistently held that, in order to receive heightened confidentiality protections, the producing party must do more than invoke the language of a protective order and assert in a conclusory manner that its documents contain trade secrets or commercially sensitive information.  *See Penn, LLC v. Prosper Bus. Dev. Corp.*, 2012 WL 5948363, at \*2, \*4 (S.D. Ohio Nov. 28, 2012) (holding that "[a]bsent some demonstration as to why designating the documents as 'Confidential' does not suffice to protect [the defendant's] interest in confidentiality, the Court sees no reason why the documents in question should be categorically shielded from Plaintiff's view"); *Guild Associates, Inc. v. Bio-Energy (Washington) LLC*, 2015 WL 1926422, at \*3 (S.D. Ohio Apr. 28, 2015) (rejecting reasons for opposing redesignation that "can only be characterized as conclusory" and "are of the sort summarily disregarded by Courts when considering the viability of an AEO designation"); *Raffel Sys., LLC v. Bob's Disc. Furniture*, LLC, 2022 WL 561892, at \*1 (E.D. Wis. Feb. 24, 2022) (holding that "[c]onclusory statements are insufficient to show that a slight expansion of disclosure puts the designating party at an appreciable risk") (internal citations omitted).

Epic's own authority confirms as much.  It cites *Advanced Magnesium Alloys Corp. v. Dery* for the proposition that designation challenges must be evaluated based on the contents of each document.  Dkt. No. 127 (Opp.) at 8; *see Advanced Magnesium Alloys Corp. v. Dery*, 2022 WL 3139391, at \*4 (S.D. Ind. Aug. 5, 2022) (holding that whether AEO designations are appropriate must be determined on a document-by-document basis and stating that "if [the designating party] has abused the AEO designation process by improperly designating a large number of documents without a reasonable basis for believing the designations were appropriate, then [the designating party] will be subject to sanctions").  This is precisely what CureIS argues; if a document's content is what matters, then Epic, as the designating party, bears the practical and

legal obligation to substantiate its designations with specificity when CureIS points out why the document does not meet the standard for AEO protection. *See id.* ("In the event such a motion [challenging designation] is filed, [the designating party] will have the burden of justifying each challenged AEO designation.").

The broader framework governing discovery confidentiality designations reinforces CureIS's position. Courts have long recognized a presumption of public access to discovery materials, and the AEO designation represents a significant departure from that presumption, one that should be employed sparingly and only where the producing party can articulate a concrete basis for requiring heightened protection. *See Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1083-84 (N.D. Ill. 2015) ("[T]here is a presumption of public access to discovery materials" and "the tradition that litigation is open to the public is of very long standing.") (internal quotation omitted). Epic's opposition does not engage with this core tenet of the discovery process at all.

For these reasons, Epic's burden argument simply ignores its own obligations and asks the Court to conclude that a party can simply say "trade secret" and maintain AEO status, regardless of whether that invocation actually meets the challenge head on. That cannot be right and is not, under the law cited above and in CureIS's opening brief, how courts approach this question.

**B.    Epic's Document-Specific Showings Remain Conclusory and Fail to Satisfy That Burden**

Epic focuses so much on burden because it is unable to address the deficiencies CureIS identified in its motion. Epic organizes its 27 documents into three categories—"Setup and Support Guides," "Upgrade Overviews," and "Strategy Handbooks"—and provides detailed discussion of only a handful of those documents. Dkt. No. 127 (Opp.) at 9; Dkt. No. 128

(McDermott Decl.) ¶¶ 10, 23, 47, 50.  Epic addresses the remaining documents only at the categorical level, broadly asserting that all documents within a given category share the same sensitive characteristics as the examples it chose to highlight.  That is insufficient.

For example, with respect to its 23 "Setup and Support Guides," Epic provides a walkthrough of a single document, the ███████████████████████ (Dkt. No. 127 (Opp.) at 14-15), and then asserts that the remaining 22 Guides ████████████ ██████████████████████████████████████████████████ and therefore warrant the same treatment.  *Id.* at 13-14; Dkt. No. 128 (McDermott Decl.) ¶ 23.  But that assertion is not sufficient; it is precisely the kind of conclusory categorical claim that courts in this circuit have rejected when considering an AEO designation.  *See Raffel Sys.*, *supra*, 2022 WL 561892, at *1; *Guild Associates*, *supra*, 2015 WL 1926422, at *3.  Epic cannot bootstrap a showing for one document into a blanket justification for 22 others.

The same problem pervades Epic's treatments of its "Upgrade Overviews" and its "Strategy Handbooks."  Dkt. No. 127 (Opp.) at 16, 18; Dkt. No. 128 (McDermott Decl. ¶¶ 47, 50).  And furthermore, Epic offers no explanation of why the CONFIDENTIAL designation that already restricts access to outside counsel and a narrow set of CureIS representatives subject to court-supervised obligations is insufficient to protect that information.  *See* Dkt. No. 116 (Protective Order) ¶ 4; *Penn, LLC*, 2012 WL 5948363, at *4 ("[Plaintiff] is bound by the Agreed Protective Order for any documents deemed "Confidential," thereby protecting [Defendant] . . . . [Defendant] has not set forth a convincing case why this protection is not enough.").  The question before the Court is not whether Epic's software is proprietary (or unique), but whether these specific documents—setup guides and user handbooks written for a non-technical audience—contain information from which a competitor could actually replicate what makes that software unique and

proprietary.  The question is whether they are sensitive enough to justify the ***most restrictive*** designation available under the Protective Order.  Epic has not made that showing.  *See Raffel Sys.*, *supra*, 2022 WL 561892, at *1; *Guild Associates*, *supra*, 2015 WL 1926422, at *3.

## II.    EPIC IDENTIFIES NO JUSTIFIABLE REASON TO TREAT THE DOCUMENTS AS AEO RATHER THAN CONFIDENTIAL

Epic devotes considerable space in its 22-page opposition to establishing that its "Galaxy" documents contain proprietary information worthy of protection.  While CureIS does not dispute that Epic's software reflects decades of investment and development, or that some of its internal materials warrant confidentiality protections, it does challenge Epic's characterization of user-facing product documentation—distributed to thousands of customers across the healthcare industry—as trade secret material so sensitive to warrant AEO treatment.  That characterization cannot be squared with: binding Seventh Circuit authority; how Epic, its thousands of customers, and an unknowable number of employees and affiliates actually use these documents; or the contents of the documents themselves.

### A.    Descriptions of What Software Does or How to Start Using It Are Not Trade Secrets Under *NEXT Payment Solutions*

Earlier this year, the Seventh Circuit addressed precisely the question presented here: whether software functionality descriptions that explain *what* a software product does without disclosing *how* it does it qualify as trade secrets.  The answer was no.  *NEXT Payment Solutions, Inc. v. CLEAResult Consulting, Inc.*, 163 F.4th 1091, 1096-98 (7th Cir. 2026) (holding that none of the software module descriptions are specific enough to "articulate a concrete secret that derives economic value from being generally unknown").  The court held that "generic descriptions" of software features that are "available to anybody using the software" and that describe end results

rather than underlying source code, algorithms, or methodology do not derive independent economic value from secrecy in the manner the trade secret definition requires. *Id.* at 1098.

Epic's "Setup and Support Guides" fall squarely within the category of documentation *NEXT Payment Solutions* held unprotectable at the AEO level. As Epic's own opposition describes them, these are documents that tell customers ███████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Dkt. No. 127 (Opp.) at 4, 13-14; Dkt. No. 128 (McDermott Decl.) ¶ 8, 24, 25. That is a description of user-facing operational documentation, not source code, not underlying algorithms, and not internal engineering specifications. Under *NEXT Payment Solutions*, that category of documentation does not qualify as a trade secret regardless of how detailed or lengthy the documents are. *NEXT Payment Solutions*, 163 F.4th at 1096-97.

Tellingly, Epic's lengthy opposition does not cite *NEXT Payment Solutions* anywhere, despite that the case is binding Seventh Circuit authority decided earlier this year, directly on point, and forecloses Epic's core trade secret theory as applied to these documents. The Court should not sustain AEO designations premised on a legal theory the Seventh Circuit has squarely rejected. *See id.*

**B.    Epic's Widespread Distribution of These Materials to Thousands of Customers Undermines Any Trade Secret Claim**

Trade secret protection requires that the holder take reasonable measures to maintain the secrecy of the information at issue. 18 U.S.C. § 1839(3); Wis. Stat. § 134.90(1)(c). Epic argues that its confidentiality agreements with customers and its "UserWeb Terms of Use" satisfy that requirement. Dkt. No. 128 (McDermott Decl.) ¶¶ 8, 12, 19. But Epic distributes these materials

to thousands of customers and their individual employees, and affiliates, and affiliates' employees, across the healthcare industry. This is a universe of recipients that, by Epic's own admission, includes every organization that has licensed the relevant software module. *Id.* ¶ 8. The scale of that distribution is fundamentally inconsistent with the kind of closely-guarded secrecy that trade secret law is designed to protect. *See Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*, 2018 WL 1156246, at *3 (N.D. Ill. Mar. 5, 2018) ("Such [a confidentiality] agreement, without more, is not enough."). "Here, [Epic] does nothing to differentiate its protective measures for the alleged proprietary trade secrets from those imposed on any other corporate information." *Id*.

The cases upon which Epic relies, *ISC-Bunker Ramo* and *Medline Industries*, do not support the proposition that distribution to thousands of customers under standard commercial confidentiality agreements preserves trade secret status for user-facing operational documentation. In *ISC-Bunker Ramo Corp. v. Altech, Inc.*, the technical compilations and information at issue were "not generally available or distributed to" all employees or customers, and were instead heavily guarded on a "need-to-have" basis. 765 F. Supp. 1310, 1322 (N.D. Ill. 1990). And "The Guide"—the key proprietary reference guide that contained "the technical information from all of the service manuals"—was "never given to a customer." *Id.* In *Medline Indus., Inc. v. C.R. Bard, Inc.*, the information being protected as AEO was "clinical data . . . about mistakes made during procedures performed on patients" that, if disclosed, could cause a harm to a third party. 2017 WL 11689704, at *2, *4 (N.D. Ill. June 5, 2017). Those cases involved genuinely technical materials and clinical data shared with a narrow and carefully controlled set of recipients, not operational guides distributed as a matter of course to every customer organization that licenses a given software. This distinction matters, because when information is shared as broadly as Epic shares its "Setup Guides", etc., the marginal harm from outside parties reviewing it under a court-

9

supervised Protective Order is not the kind of concrete, particularized competitive injury that justifies the most restrictive discovery designation available. *See Global Material Techs.*, *supra*, 133 F. Supp. 3d at 1083–84; *Raffel Sys.*, *supra*, 2022 WL 561892, at *1.

**C.**      *TCS* **Addressed Showings For Specific Documents And Did Not Hold Similar Treatment Should Apply For Every Document In The Same Database**

Epic's relies heavily on *Epic Sys. Corp. v. Tata Consultancy Services*, in which the Seventh Circuit affirmed a trade secret misappropriation verdict arising from a competitor's unauthorized use of certain Epic documents. *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1125-26, 1131-32, 1142 (7th Cir. 2020) ("*TCS*"). Epic argues that *TCS* confirms the documents at issue here carry significant competitive value and that their disclosure to a competitor would cause concrete harm, because they come from the same database. Dkt. No. 127 (Opp.) at 13. But, in *TCS*, Epic demonstrated that the ***specific documents*** at issue from the UserWeb Epic database had actual competitive value. *TCS*, 980 F.3d at 1125 (describing how the eleven-page comparative analysis "had been used to improve Med Mantra"). In other words, the 6,000 pages of documents provided sufficient detail for Epic's competitor to replicate Epic's product functionalities. *Id.* at 1125-26. Here, while the documents at issue may have been accessed on a secure database, Epic has not shown that the ***contents*** of the documents, unlike those in *TCS*, contain competitively sensitive information rising to the level of trade secrets (and therefore AEO protection).

Moreover, the situation here could not be more different than in *TCS*. CureIS is not seeking to download, weaponize, or exploit Epic's "Set Up Guides." Instead, CureIS intends to review these materials under a court-supervised Protective Order, subject to all the obligations and restrictions that entails, for the purpose of litigating this case. Dkt. No. 116 (Protective Order) ¶¶ 4-5. Epic's reliance on *TCS* effectively argues that no competitor should ever obtain discovery

of any materials housed in the same database as genuine trade secrets, regardless of their relevance or the availability of protective measures and regardless of any actual trade secret or otherwise highly confidential status. That is not a position the Seventh Circuit (or, to CureIS's understanding, any other court) has endorsed and one that would render the Protective Order's CONFIDENTIAL designation essentially null and void. The Court should decline to extend *TCS* beyond the context and showings in which it was decided.

### III.    EPIC'S *THK AMERICA* COUNTERARGUMENT FAILS

Epic devotes significant effort to distinguishing *THK America* on the grounds that the protective order in that case had a different structure than the one here, in that trade secrets fell into the lower Confidential tier and AEO was a narrow subcategory of trade secret materials. Dkt. No. 127 (Opp.) at 20–21; *THK Am., Inc. v. NSK Co.*, 157 F.R.D. 637, 641-43 (N.D. Ill. 1993). Epic's description is technically accurate but functionally beside the point. The principle *THK America* established—that AEO-level protections must be reserved for a genuinely narrow subset of the most sensitive materials, and that wholesale application of the designation is contrary to the purpose of a tiered protective order—applies with equal force here regardless of how many tiers there are in the protective order. In either case, AEO is the highest tier.

#### A.    The Functional Structure of This Protective Order Mirrors *THK America*

The Protective Order in this case defines CONFIDENTIAL designations broadly to encompass "proprietary or confidential business information, non-public personal, client, or customer information." Dkt. No. 116 (Protective Order) ¶ 3. AEO is then reserved for the subset of that information that also "contains, reflects, or could reveal" trade secrets or highly competitive and commercially sensitive proprietary information. *Id.* The structural implication of this framework is the same as in *THK America*: the vast majority of sensitive documents should be

CONFIDENTIAL, with AEO reserved for only the most competitively dangerous materials. A tiered protective order is only meaningful if both tiers are used appropriately; if every document in a production is designated at the highest tier, the lower tier serves no purpose. *See THK Am.*, 157 F.R.D. at 643, 645.

Epic's reading of the Protective Order would effectively collapse the two-tier system by treating any confidential document as automatically qualifying for AEO. The Protective Order contemplates that a CONFIDENTIAL designation, with its own set of meaningful access restrictions, will adequately protect most sensitive materials, and reserves AEO for those rare documents where even that protection is insufficient. Dkt. No. 116 (Protective Order) ¶¶ 3, 4.

**B.      Epic's Blanket Designation of Its Entire Initial Production Is the "Wholesale Use" *THK America* Condemned**

The record of this dispute speaks for itself. Epic designated all forty documents in its first production as AEO, an initial designation rate of one hundred percent. Dkt. No. 126-1 (Slagter Decl.) ¶ 4; Dkt. No. 127 (Opp.) at 3; *see THK Am.*, 157 F.R.D. at 645 (stating that designating "at least 79% of the documents produced" as AEO was "absurdly high"). To date, Epic has taken a piecemeal approach to redesignate eight of those documents to CONFIDENTIAL. First, Epic redesignated two of the documents, but only after CureIS first raised its challenge to Epic's counsel. Dkt. No. 126-1 (Slagter Decl.) ¶¶ 5-6. After refusing to redesignate further, CureIS filed its Motion with the Court. *Id.* ¶ 8. Only then did Epic take another look at its designations and determine that it should redesignate another six documents, doing so for the first time in its opposition and

providing no justification for why those documents were not redesignated sooner. Dkt. No. 127 (Opp.) at 1 n.1; Dkt. No. 131 (Loken Decl.) ¶ 3.

These concessions[1] are telling: they confirm that Epic's original designations were not the product of careful, document-by-document assessment, but instead a reflexive default applied to everything produced from the Galaxy repository. That is precisely the "wholesale use" of the AEO designation that *THK America* held was "contrary to the very purpose of the parties' agreed upon two-tiered Protective Order." *THK Am.*, 157 F.R.D. at 643; *see also id.* at 645 (calling such designation a "blatant misuse" of the AEO protection and noting that "[t]he record demonstrates that the defendants' abuse of the 'Attorney's Eyes Only' designation is not due to inadvertence or mistake" but was instead a "deliberate attempt" to avoid the dictates of the Protective Order").

## IV.    THE ABSENCE OF IN-HOUSE COUNSEL DOES NOT JUSTIFY BLANKET AEO DESIGNATIONS

Epic argues that because CureIS has no in-house counsel, all CONFIDENTIAL documents would automatically reach CureIS's employees involved in competitive decision-making, elevating the risk of disclosure beyond what the Protective Order was designed to address. Dkt. No. 127 (Opp.) at 8-9. This argument is flawed and should be rejected. It also relies on an inaccurate premise.

If taken to its logical conclusion, Epic's argument would mean that any party without in-house counsel is categorically disqualified from receiving CONFIDENTIAL discovery because

---

[1]    Epic's incremental concessions also undermine its argument that CureIS failed to meet and confer in good faith, since the fact that Epic agreed to redesignate eight documents only after CureIS raised a formal challenge suggests that Epic's own pre-motion review of its designations was cursory at best. CureIS should not be penalized procedurally for Epic's failure to carefully consider and apply the Protective Order's standards before designating its production. Furthermore, CureIS's non-challenge of the five "Roadmap" documents demonstrates good-faith, document-by-document engagement. Dkt. No. 126-1 (Slagter Decl.) ¶ 5.

any such party's litigation counsel could theoretically share CONFIDENTIAL materials with the client's competitive decision-makers. That is not the law, and no court has endorsed that position. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 2018 WL 6413199, at \*3 (N.D. Ill. Dec. 6, 2018), *objections overruled*, 2019 WL 11583408 (N.D. Ill. Apr. 25, 2019) ("Courts have found that confidentiality orders with [limited use and destruction after final judgment] provisions are sufficient to protect a party or third-party's interest."); *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 2018 WL 1071444 at \*4 (N.D. Ill. 2018) (upholding Magistrate Judge's ruling that party was protected by confidentiality order preventing parties from using confidential information outside of litigation).

The ***stipulated*** Protective Order contemplates disclosure of CONFIDENTIAL materials to a defined set of party representatives, including officers, directors, and employees directly involved in the litigation. Dkt. No. 116 (Protective Order) ¶ 7. It does so because the parties recognized their non-legal employees have legitimate interests in understanding the discovery record in their own cases, and that the CONFIDENTIAL designation provides sufficient protection for most sensitive materials. Epic negotiated and agreed to those terms; it should not be allowed now to argue that the Protective Order it helped draft is inadequate to protect its interests. What Epic cannot do is use CureIS's corporate structure as a justification for blanket AEO designations across 27 documents, none of which have been shown to warrant that level of protection on their own merits. Further, as a reminder, Epic convinced this Court it would not be inequitable to prevent a very limited set of non-competitive decisionmakers at CureIS from reviewing AEO

14

materials.  Yet it now weaponizes the Court's agreement with that argument in this dispute, which reflects the exact dangers CureIS identified in the argument over the Protective Order's terms.

## CONCLUSION

For the reasons described above, CureIS respectfully requests that the Court grant its motion and order redesignation of the remaining documents at issue to CONFIDENTIAL.

DATED:  May 12, 2026                           QUINN EMANUEL URQUHART &
                                               SULLIVAN, LLP


                                           By _____/s/ Adam Wolfson_____
                                               Adam Wolfson
                                               *Attorney for Plaintiff,*
                                               *CureIS Healthcare, Inc.*

## CERTIFICATE OF SERVICE

I, Adam Wolfson, certify that on May 12, 2026, a copy of the foregoing was served on all attorneys of record via email.


 */s/ Adam Wolfson*
Adam Wolfson